DANIEL ARFF, Appellant, v. THE STAR FIRE INSURANCE COMPANY, Respondent.

An ordinary agent of a fire insurance company has the power to employ such clerks as may be necessary to discharge the usual business of his agency, and a waiver the agent himself could make is to be attributed to him when made by his clerk.

Soliciting insurance is part of the business of such agents, and it is not to be assumed that such solicitation can be made only by them personally; nor can it be held as matter of law, when insurance is solicited by a person exclusively employed by such agents, that such solicitation makes the person thus employed an insurance broker and takes away from him his character as clerk or employe; the fact that such person is paid for his services by a commission on the business he brings is not conclusive upon the question of the capacity in which he works.

A provision in an insurance policy that no one not holding the commission of the company shall be considered its agent, does not prevent the employment by a commissioned agent of the usual and necessary clerical and other assistants to enable him to properly perform his duties.

When such clerks are thus employed the ordinary rules of law are applicable to their acts and positions.

A policy of insurance issued by defendant required the assured to notify the company of any other insurance upon the property, and declared the policy void in case of neglect to comply with its conditions. It also provided that " only such persons as shall hold the commission of this company shall be considered as its agents in any transaction relating to this insurance." Plaintiff having obtained other insurance on the property informed one S., upon whose solicitation plaintiff made application for the policy, who said it was all right. S. was employed to solicit insurance by a firm who were commissioned agents of defendant, having

authority to give permits for further insurance; he had a desk in the agents' office, and was paid for his services by a commission on the business he procured. In an action upon the policy S. testified that he worked for no one except defendant's agents. Plaintiff was non-suited. *Held,* error; that if S. was so exclusively employed he was not an ordinary insurance broker, but one of the clerks or employes of said agents, and as such was authorized to receive notice and consent to other insurance; and that the testimony as to his exclusive employment being contradictory, it should have been submitted to the jury.

*Mellen* v. *Hamilton Fire Ins. Co.* (17 N. Y. 609); *Devens* v. *Mechanics & Tr. Ins. Co.* (83 id. 168), distinguished.

Upon the trial plaintiff's counsel asked one of defendant's agents whether clerks in their employ did not frequently and generally sign consents for other and additional insurance in respect to the defendant company, and whether it had been the habit of said agents to attend to the details of the business, and how many clerks they had. These questions were objected to and excluded. *Held,* error.

(Argued October 29, 1890; decided December 2, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made at the July term, 1888, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Circuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry A. Merritt* for appellant. The policy is not avoided by reason of its being mentioned and inserted by mistake in the proofs of loss that the property was incumbered. (*Dresser* v. *U. F. Ins. Co.*, 12 N. Y. S. R. 434.) As the policy in this case does not provide in what manner notice of additional insurance shall be given, notice may be given by parol. (*McEwan* v. *M. C. M. Ins. Co.*, 5 Hill, 101.) Notice to an agent is notice to the company. (*Van Schaick* v. *Ins. Co.*, 68 N. Y. 434; *Partridge* v. *Ins. Co.*, 17 Hun, 95; *Pelton* v. *Ins. Co.*, 19 Alb. L. J. 516.) The acts of a clerk of a duly authorized agent of an insurance company are the acts of the agent, and bind the company. (*Bodine* v. *E. F. Ins. Co.*, 51 N. Y. 117; *Cook* v. *A. F. Ins. Co.*, 7 Daly, 555, 560; *Chase*

v. *P. F. Ins. Co.*, 14 Hun, 456, 458; *Allen* v. *S. L. Ins. Co.*, 85 N. Y. 473; *Davis* v. *L. Ins. Co.*, 18 Hun, 230; *Kuney* v. *A. Ins. Co.*, 36 id. 66.) Notice of the additional insurance obtained by the plaintiff, which it is claimed avoids the policy in question, was given to Werner Strecker, and by him consented to, and the question in this case, aside from errors in excluding evidence, is, whether such notice and consent was notice to and consent by Macdonald & Van Alstyne, and bound the defendant. (Story on Agency, § 28; *M. & M. D. Co.* v. *O. Ins. Co.*, 13 Fed. Rep. 74; *M. Bank* v. *N. Y. & N. H. R. R. Co.*, 13 N. Y. 599; *F. & M. Bank* v. *B. & D. Bank*, 16 id. 125, 128, 143; *Perkins* v. *W. Ins. Co.*, 4 Cow. 645; *Johnson* v. *Jones*, 4 Barb. 369; *Lightbody* v. *N. A. Ins. Co.*, 23 Wend. 18; *W. T. Co.* v. *Hawley*, 1 Daly, 327; *McClure* v. *Cain*, 3 Abb. Ct. App. Dec. 76.) Plaintiff had a right to show that he knew of no limitation as to the authority of Strecker as a servant of Macdonald & Van Alstyne. (*Angell* v. *H. F. Ins. Co.*, 59 N. Y. 171; *Ruggles* v. *A. C. Ins. Co.*, 23 N. Y. S. R. 847.) The facts proved constituted Werner Strecker the servant or clerk of Macdonald & Van Alstyne, agents of the defendants, so far as plaintiff was concerned, and hence, in law, so far bound the defendant as to make notice to him of additional insurance, notice to the defendant, or it was a proper question for the jury to determine. (*McEwan* v. *M. C. M. Ins. Co.*, 5 Hill, 101, 105.)

*R. A. Parmenter* for respondent. Strecker was not in any sense the agent of the defendant, and notice to him of other insurance was insufficient. (*Elwood* v. *W. U. T. Co.*, 45 N. Y. 549; 70 id. 179; *Herman* v. *N. F. Ins. Co.*, 100 id. 411.) Strecker was not even the agent of Macdonald & Van Alstyne. (Bouvier's Law Dict. tit. Agent.) Notice to an insurance broker is not notice to the company who issues the policy. (*Devins* v. *M. & T. Ins. Co.*, 83 N. Y. 168; *Mullen* v. *H. F. Ins. Co.*, 17 id. 609; *Herman* v. *N. F. Ins. Co.*, 100 id. 411.) As the condition of the policy required the plaintiff to

give notice to the company of any other insurance, and the company, on receiving such notice, was at liberty to cancel the policy, the policy is avoided by a failure to give such notice. (*Bigler* v. *N. Y. C. Ins. Co.*, 22 N. Y. 402.)

PECKHAM, J. This is an action to recover upon a policy of insurance issued by the defendant upon certain personal property belonging to the plaintiff. A loss having occurred, and plaintiff having made a demand upon defendant for payment under the policy, the defendant refused to pay because it appeared that other insurance had been taken subsequent to the issuing of the policy in question, and, as defendant claimed, no notice had been given to it of the taking of such insurance. There was a clause in the policy by which the plaintiff "agreed to notify the company if, at the making of this insurance, or at any time during its continuance, there shall be any other insurance applied to the property herein described, or any part thereof, whether the same be valid or not." It was also provided that the policy should become void if the assured neglected to comply with its terms, conditions or covenants. There was also a provision in the policy that "only such persons as shall hold the commission of this company shall be considered as its agents in any transaction relating to this insurance or any renewal thereof, or the payment of premium to the company. Any other person shall be deemed to be the agent of the assured, and payment of the premium to such person shall be at the sole risk of the assured."

The plaintiff claimed upon the trial that he had given the notice required by the company. He had in fact given it to one Werner Strecker, and whether or not that notice is sufficient is the only question in the case.

The plaintiff was nonsuited on the ground that he had not given the notice as required by the policy, and that judgment of nonsuit has been affirmed by the General Term, and the plaintiff appeals here.

It appeared in evidence that Macdonald & Van Alstyne were the duly commissioned agents of the company in the city

of Troy at the time when this policy was issued. Mr. Van
Alstyne swore that his firm had authority as agents of the
defendant to give permits for additional insurance and to con-
sent to assignments for transfers of insurance. He also stated
that their authority as agents of the defendant was to do a
general insurance business for the company, collect premiums,
give receipts and consents and indorsements on insurance poli-
cies. They had been agents of the defendant for five or six
years at the time in question. When this policy was issued,
and up to the time of the occurrence of the loss, this firm had
been doing business in the city of Troy for the defendant as
general insurance agents, and during that time Mr. Van
Alstyne said that they "had in their employ, among others,
this Werner Strecker," and he designated the manner of his
employment as " working for us as a broker; I mean soliciting
insurance on commission; he was soliciting insurance for our
firm, and our firm only, on a commission; his compensation
was regulated by certain commission on business he brought.
He did not do other fire insurance that I know of; what he
would do would be to go and solicit insurance and bring it to
our office; if we approved it, we would take it and pay him
his commission; that was all. He was not soliciting fire insur-
ance for anyone else. His arrangement about his working for
us in the way of fire insurance was that he was employed by
us to solicit insurance for our office exclusively, upon which
we paid him a commission upon the business he brought in."
He also said that Strecker had a desk in their office during
this time, "not one of his own, but he used one that was in
the office, the same as any person; when he happened in, he
came in and used a desk there the same as any broker; he had
a desk that he used pretty much all the time for himself."

Mr. Strecker himself testified that he was "in the insurance
business principally in 1884; fire and life both; working for
Macdonald & Van Alstyne, and for no one else, not in fire
insurance; I was paid according to the business I brought in;
if I did a great deal of business I got a great deal of money,
and if I didn't, I got less; during that year, I do not know

whether it could be called working under a salary or not; it was always regulated by the amount of business; there was a desk in the office I usually occupied; the nature of my employment was soliciting."

He solicited from Mr. Arff an application for the policy in question, and it was after the issuing of the policy that the plaintiff informed Mr. Strecker that other insurance had been taken through Mr. Fromann.

It was also stated by Mr. Van Alstyne that, under their agreement with Mr. Strecker, "he was at liberty to work for any other insurance company, if he pleased; he could place his business with other insurance companies, if he chose; he could place such business as he solicited with other companies, if he chose, with other agents; he had, for some considerable period anterior to 1884, acted for us in the matter of soliciting fire insurance; his office was located with us; he had a desk in our office; prior to this, he had been in our employ since 1880, doing business exclusively for our company, and having a desk in our office during that time."

There was thus evidence from which the jury could infer that Mr. Strecker was solely in the employ of these agents, and that the kind of employment in which he was engaged was the soliciting for them of policies of insurance and for them exclusively, and that his compensation for the services performed by him for them depended upon the amount of business which he was able to do, or, in other words, the number of applications which he secured for them and which they accepted. It is true that Mr. Van Alstyne denominated this kind of service as the service of a broker, and he also stated that Mr. Strecker was at liberty to work for any other insurance company if he pleased. If he meant that Mr. Strecker had the power to violate his agreement with them, and instead of working exclusively for them, work for others, why that is a self-evident proposition, and has no bearing upon the question as to the capacity in which he was then employed by them. If he meant to assert that he was not exclusively employed by them, then it is a contradiction of what the wit-

ness had already several times stated to be the truth, and also a contradiction of the testimony of Mr. Strecker himself, and the fact of exclusive employment, if material, should have been left to the jury to determine. If the witness Strecker were really nothing but an ordinary insurance broker, notice to him of subsequent insurance would not be notice to the company. (*Mellen* v. *Hamilton Fire Ins. Co.*, 17 N. Y. 609 ; *Devens* v. *Mechanics'*, etc., *Ins. Co.*, 83 id. 168.)

What is understood under the designation of an insurance broker is one who acts as a middleman between the insured and the company, and who solicits insurance from the public under no employment from any special company, but having secured an order he either places the insurance with the company selected by the insurer, or in the absence of any selection by him, then with the company selected by such broker. Ordinarily, the relation between the insured and the broker is that between the principal and his agent, and according to Arnould on Insurance (Vol. 1, chap. 5, pg. 108, of the 2d ed.): " The business of a policy broker would seem to be limited to receiving instructions from his principal as to the nature of the risk and the rate of premium at which he wishes to insure; communicating these facts to the underwriters; effecting the policy with them on the best possible terms for his employer; paying them the premium, and receiving from them whatever may be due in case of loss."

In the two cases above cited of *Mellen* v. *Hamilton Fire Insurance Co.* and *Devens* v. *Mechanics'*, etc., *Ins. Co.*, it appeared that the broker who effected the insurance in either case was not in the employment of the insuring company at all, and that the only connection between the company and him was that when he presented to them an application for insurance, if the company chose to issue a policy, he was paid a commission thereon by the company. In each of those cases the man procuring the insurance was not confined to any company in his labors; he was in no sense in the employment of any company, and the nature of his connection was such that, upon receipt of the premium by the company and the delivery

of the policy to the insured, his connection with the company wholly ceased.

The connection in this case between this assumed broker and his principals is entirely different. Assuming the truth of the statement that he was in the exclusive employment of these agents and that it was his duty in such case to bring whatever applications he received to the agents, because of his agreement with them that he should work for them exclusively, it would seem that his character as an ordinary insurance broker had ceased from the time that he entered into such employment. However these agents might characterize his employment, the fact upon the testimony in the case, assuming its truth as above construed, leaves him, in my opinion, nothing more or less than a clerk or employe of these agents. He performs the same duties that would be performed by an individual employed as a clerk and told to do this business. The mere solicitation of insurance and the bringing of the application to these agents, who are to determine finally whether it shall or shall not be accepted, is not of such a nature that it could not be done by an ordinary clerk, nor does the doing of it in that way and under such circumstances necessarily preclude the person who does it from occupying the position of clerk and place him in the position of an ordinary insurance broker. If upon these facts he acted as clerk and the oral notice were given to him in his capacity of clerk of these agents, such notice would be sufficient. (*McEwen* v. *Montgomery Co. Mut. Ins. Co.*, 5 Hill, 101; approved in *Wilson* v. *Genesee Mut. Ins. Co.*, 14 N. Y. 418 at 421.)

It has been held that an ordinary agent of an insurance company has the power to employ clerks to discharge the ordinary business of his agency, and that a waiver of a character which the agent himself could make is to be attributed to him when made by his clerk. In *Bodine* v. *Exchange Fire Insurance Company* (51 N. Y. 117), it was said by Earl, Commissioner, at page 123 : "We know, according to the ordinary course of business, that insurance agents frequently have clerks to assist them ; and that they could not transact their business if

obliged to attend to all the details in person, and these clerks can bind their principals in any of the business which they are authorized to transact. An insurance agent can authorize his clerk to contract for risks, to deliver policies, to collect premiums and to take payments of premiums in cash or securities, and to give credit for premiums or to demand cash; and the act of the clerk in all such cases is the act of the agent, and binds the company just as effectually as if it were done by the agent in person. The maxim of *delegatus non potest delegare* does not apply in such a case. (Story on Agency, § 14.)"

In the case of *Clark* v. *Glens Falls Insurance Company* (21 N. Y. Dig. 197), the General Term of the Supreme Court held that the policy in that suit, countersigned by a clerk in the office of the authorized and commissioned agent of the defendant was a proper and valid policy, where the clerk was authorized by the agent to contract new insurance and to give renewals, to make monthly and daily reports and collect premiums on policies and renewals issued.

In *Chase* v. *People's Fire Insurance Company* (14 Hun, 456), it was held that the knowledge of a clerk of the agents of defendant's company that the house insured was vacant, was the knowledge of the agents of the company, and, therefore, the knowledge of the company itself. And in *Kuney* v. *Amazon Insurance Company* (36 Hun, 66), the Supreme Court in the fifth department held that a general agent of a foreign insurance company had a right, by virtue of its authority and for the purpose of discharging the duties appertaining to his office, to employ all necessary agents, clerks and surveyors to enable him to conduct the business with correctness, intelligence and promptness, and that when he did in fact employ others, their acts and contracts would be binding upon the company the same as if made personally by Miller the general agent.

Enough has been said to show that an agent of an insurance company has the right to, and indeed it is the expectation of the company that he will employ such clerks and other assistants as may be necessary and proper in order that he may do

the business for which he has been appointed agent.   Solicit-
ing insurance is part of the business of such agents, and it is
not to be assumed that such solicitation can be made only by
the agents personally, nor can it be held as matter of law that
when it is made by some person employed exclusively by them
that such solicitation, on the part of the person thus employed,
makes him an insurance broker and takes away from him his
character as clerk or employe of the agent.   The fact that
Strecker was compensated for his services to these agents by a
commission on the business which he brought in, is not con-
clusive upon the question of the capacity in which he worked.
Clerks or other employes are frequently compensated by a
commission upon the amount of business brought to the
employer by them.   In order to constitute Strecker such an
employe that he might receive notice for his employers as to
subsequent insurance in a case like this, it is not necessary that
he should have been engaged to perform only such duties as
may be and are done in the office of his employer.   The place
of the performance of the duties is neither the sole nor always
a necessary criterion by which to judge of the nature of such
service.   The employe of the agent in the case of *Bodine* v.
*Exchange Fire Insurance Company* (*supra*), was not confined
to the office in the performance of duties which he discharged
for his employer.

There is, moreover, in the evidence of one of the agents
sufficient for a jury to infer that Strecker had a desk in their
office and belonging to them, assigned to him for his personal
use while at the office in the discharge of his duties pertaining
to his employment by them, and that it was his habit to so use
the desk, which was regarded as his for such purpose.   But
upon the question of the character of the service we think it is
sufficient that the person is engaged by the agent to do for
him some portion of the ordinary, usual and well known
duties pertaining to the position of the agent, and what he does
in the course of that employment and within its general
scope is done by the agent.   The notice which he receives
while in the performance of his duties, and which relate to

the subject-matter thereof must be regarded in the same light as and equivalent to a notice to the agent.

.The proof in the case is susceptible of the inference that Strecker was employed exclusively by the agents of defendant, and to perform for them that which is part of the ordinary and usual business of an agent of an insurance company, viz. : to solicit business.   If the agents refused to accept the particular application, Strecker had nevertheless done all that he was employed to do by bringing it to them.   By his agreement their refusal did not authorize him to solicit some other agent or company to take the risk.   At least this construction can be given to some of the evidence on the part of the plaintiff.   In truth in one view of the evidence, Strecker was not a middleman at all ; he did not act as such in this case ; what he did was done by him from the very first in the interest of and for these particular agents.

Nor does the provision in the policy that no one not holding the commission of the company shall be considered as its agent, prevent the agent's employment of the usual and indeed necessary clerical and other assistants, in order to enable them to properly perform their duties as commissioned agents of the company.   And when thus employed the ordinary rules of law are applicable to their acts and positions.   We think that if Strecker were exclusively employed by the agents, and that his duties could only be honestly discharged while the agreement between them lasted by giving his entire service in that line to the agents of the defendant, and if he were thus employed at the time that he procured this application and received this notice, that the defendant is bound by such notice the same as if it had been given in person to their agents.

If on the contrary, according to some possible construction of the evidence of one of the agents, the employment were not exclusive, and he was occupying really the position of a simple insurance broker, then the notice was not sufficient. There were many questions put to the agent when he was on the stand, the purpose of which was to show (what may be

inferred from the nature of the business) that the agents. employed clerks.

Counsel for the plaintiff also asked the witness whether clerks in his employ did not frequently and generally sign consents for other and additional insurance in respect to this company, whether it had been the habit of this firm of agents to attend to the details of the business, and how many clerks the firm had at this time. All these questions were objected to and ruled out by the court below. We think they were proper for the purpose of showing the manner in which the business of this firm was conducted, although perhaps the court might assume or take judicial notice of the fact that agents of an insurance company do business largely through clerks and sub-agents, and that many of the details of their business are not performed by themselves. We should not perhaps in this instance reverse the judgment for the refusal to admit this evidence, but we think its admission would not have been error.

Upon the whole we think the learned judge erred in non-suiting the plaintiff, and that the judgment entered upon the nonsuit must be reversed and a new trial granted with costs to abide the event.

All concur, except EARL and GRAY, JJ., dissenting.

Judgment reversed.