GEORGE C. CARPENTER et al., Respondents, *v.* THE GERMAN AMERICAN INSURANCE COMPANY, Appellant.

A policy of fire insurance contained a condition that if the assured were not the sole owners of the property insured, or did not have title to the land on which it was situated in fee simple, and this fact was not expressed in the policy, it should be void. The assured held the land under a contract of purchase; this fact was not expressed in the policy, but had been communicated to a clerk of the general agent of the insurer who had been sent to make an examination of the premises preliminary to the risk. In an action upon the policy, *held*, that notice to the sub-agent while so engaged in soliciting the insurance was notice to the company, and bound it to the same extent as though it had been given directly to the agent himself; and so, that the policy was not avoided by the condition.

The policy provided for immediate notice of loss, and that a particular account thereof should be rendered to the company. It appeared that

notice of the fire was given by plaintiff to the company on the day it occurred. A few days after adjusters examined the premises, and experts were employed to make estimates of the value of the property burned. When this, after considerable delay, was accomplished, an insurance man was employed to prepare formal proofs; he delayed doing so for about a month. The principal plaintiff was called away several times on important business, and was unable to give his personal attention to preparing and forwarding the proofs. They were not received by defendant until 115 days after the fire. After receiving them defendant insisted upon examining, and did examine, said plaintiff under oath upon matters relating to the loss. *Held,* that plaintiff was required to serve the proof of loss within a reasonable time; but under the circumstances it could not be decided as a matter of law that the delay was unreasonable; and that the question was properly submitted to the jury.

Also *held,* that the insistence of defendant upon the right to examine plaintiff after service of proof of loss was a waiver of any objection founded on the delay.

The contract of purchase was with a bank. K., its president, held the title for the benefit of the bank; the conveyance having been made to him because of a statute of Pennsylvania, in which state the premises were situated, forbidding foreign corporations from acquiring and holding real estate in that state. This was forgotten by its officers when the contract was made, and K. advised and consented to the contract. *Held,* that while the bank did not have the legal title it was, the beneficial owner, and, conceding it could not, in view of said statute, have established a trust in its favor enforceable against K., that a suit in equity could have been maintained by plaintiffs on performance of the contract on their part, against the bank and K. to compel a conveyance of the land; and, therefore, that plaintiff had an insurable interest in the property.

(Argued June 9, 1892; decided October 4, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 23, 1891, which affirmed a judgment in favor of plaintiffs entered upon a verdict, and affirmed an order denying a motion for a new trial.

This was an action upon a policy of fire insurance.

The facts, so far as material, are stated in the opinion.

*Martin W. Cooke* for appellant. The conditions of the policy with respect to the preliminary proofs of loss to be fur-

nished by the plaintiffs to the defendant were not observed, but were violated by the plaintiffs. (May on Ins. 568, § 465; *Blossom* v. *L. F. Ins. Co.*, 64 N. Y. 162.) The circum-stances under which the plaintiffs were examined after the proofs of loss were furnished, did not deprive the defendant of the objection in respect of proofs of loss. (*Titus* v. *G. F. Ins. Co.*, 81 N. Y. 410.) It was essential to the verdict ren-dered that the jury should find that plaintiffs notified defend-ant of the character of their title, or that defendant had knowledge of the state of the title when it issued the policy, and such finding was against the evidence, or so palpably against the weight of evidence as to leave no doubt as to the conclusion that the jury was influenced by passion or preju-dice in respect of the verdict. (*Constant* v. *University of Rochester*, 111 N. Y. 604; *Slattery* v. *Schwaneeke*, 118 id. 543; *Walton* v. *A. Ins. Co.*, 116 id. 317; *Weed* v. *L. & L. F. Ins. Co.*, Id. 106; *Bell* v. *L. F. Ins. Co.*, 19 Hun, 238, 243, 244; *Bush* v. *W. F. I. Co.*, 63 N. Y. 531; *Van Allen* v. *F. F. S. I. Co.*, 64 id. 469.) Assuming that the statement to Mandeville or to Andrews, or to both, was made to the company, the plaintiff is not relieved from the for-feiture of the policy under its terms. (*Garfield* v. *Hatmaker*, 15 N. Y. 475; *Webb* v. *Rice*, 6 Hill, 219; *Everett* v. *Everett*, 48 N. Y. 218; *Sweeney* v. *F. Ins. Co.*, 20 Penn. St. 337.) It was error to charge that if plaintiffs made the representa-tions as to title, which they claim they did make, they were entitled to recover. (*Rohrback* v. *G. Ins. Co.*, 62 N. Y. 47; *Alexander* v. *G. F. Ins. Co.*, 66 id. 464; *Pierce* v. *E. S. Ins. Co.*, 62 Barb. 636; *Mead* v. *N. W. Ins. Co.*, 7 N. Y. 530; *Wilson* v. *H. M. Ins. Co.*, 6 id. 53; *French* v. *C. M. Ins. Co.*, 7 Hill, 122; *Jennings* v. *C. M. Ins. Co.*, 2 Den. 75; 5 id. 326; *Wall* v. *Howard*, 14 Barb. 383; 56 N. Y. 565.)

*George Wadsworth* for respondent. The plaintiffs had an insurable interest. (1 Phillips on Ins. 110, § 180; *Shotwell* v. *J. Ins. Co.*, 5 Bosw. 247; *Æ. Ins. Co.* v. *Tyler*, 16 Wend. 296; *Griffey* v. *N. Y. C. Ins. Co.*, 110 N. Y. 417;

*Bicknell* v. *L., C. & C. F. I. Co.*, 58 id. 677 ; *S. Ins. Co.* v. *Lewis*, 42 Ga. 587 ; *New York* v. *B. Ins. Co.*, 41 Barb. 231 ; *Riggs* v. *C. M. Ins. Co.*, 125 N. Y. 7 ; *E. R. R. Co.* v. *R. Ins. Co.*, 98 Mass. 420 ; *Redfield* v. *H. P. I. Co.*, 56 N. Y. 354 ; *S. F. & M. Co.* v. *Allen*, 43 id. 389, 396 ; *Herkimer* v. *Rice*, 27 id. 163, 175, 177 ; 1 Wood on Fire Ins., 645, § 281 ; *Coursin* v. *P. Ins. Co.*, 46 Penn. St. 323 ; *C. Ins. Co.* v. *Lawrence*, 2 Pet. 25 ; *Smith* v. *B. Ins. Co.*, 6 Cush. 448 ; *Milligan* v. *E. Ins. Co.*, 16 U. C. [Q. B.] 314 ; *Lerow* v. *Wilmarth*, 9 Allen, 382.) The statutes of Pennsylvania, concerning the holding of lands in that state by a foreign corporation, create no defense to this action. *Beatty* v. *Benton*, 73 Ga. 187 ; *Phillips* v. *Moore*, 100 U. S. 211 ; *Cross* v. *De Valle*, 1 Cliff. 282 ; *Goundie* v. *N. Y. & C. R. R. Co.*, 132 Penn. St. 610.) The demand by defendant that plaintiffs should submit to an examination under oath, pursuant to the requirements of the policy, was a recognition of the validity of the policy, and a waiver of all grounds of forfeiture of which it then had knowledge. (*Titus* v. *G. F. Ins. Co.*, 81 N. Y. 410, 419 ; *Roby* v. *A. C. Ins. Co.*, 120 id. 501 ; *Brink* v. *H. F. I. Co.*, 80 id. 108 ; *Storm* v. *P. F. Ins. Co.*, 40 N. Y. S. R. 40 ; *Beales* v. *W. F. Ins. Co.*, 75 N. Y. 7.) Notice to Mandeville, the agent, of the manner in which the property was held was enough. (*Bidwell* v. *N. W. Ins. Co.*, 24 N. Y. 302, 304 ; *Rowley* v. *E. Ins. Co.*, 3 Keyes, 557 ; *McCulloch* v. *Norwood*, 58 N. Y. 562 ; *Haight* v. *C. Ins. Co.*, 92 id. 51 ; *Whitted* v. *G. F. I. Co.*, 76 id. 415 ; *Van Schaick* v. *N. F. I. Co.*, 68 id. 434 ; *Sprague* v. *H. P. Ins. Co.*, 69 id. 128 ; *Baldwin* v. *C. Ins. Co.*, 60 Hun, 389.)

ANDREWS, J.   It must be assumed in disposing of this appeal that Andrews, the subagent of Mandeville, before the original policy was issued of which the policy upon which this action is brought is a renewal, was sent by Mandeville to inspect the premises and arrange the insurance, and that he was then informed by the plaintiff that the property upon which the

insured building was erected was held under a contract of purchase from the State Bank of Elizabeth, New Jersey.   If this constituted notice to the defendant, then, within our decisions, the policy was not avoided by the printed condition that if the assured is not the "sole, absolute and unconditional owner of the property insured, or if said property be a building and the insured be not the owner of the land on which said building stands, by title in fee simple, and this fact is not expressed in the written portion of the policy, this policy shall be void." (*Van Schoick* v. *Niagara Frie Ins. Co.*; 68 N. Y. 434.) It appears that Mandeville was a general agent of the defendant, clothed with power to make contracts of insurance and to issue policies, and was furnished with printed forms which he filled up as occasion required.   He was agent for several other companies also, which presumably upon the evidence was known to the defendant.   Andrews had been employed by him for several years before the policy in question was issued, to solicit insurance, acting as Mandeville's clerk and employe.   It has been the common custom and practice of agents of insurance companies, having the power of general agents, to employ subordinates to render services similar to those rendered by Andrews, and we have held that notice to such a subagent while engaged in soliciting insurance of any fact material to the risk, and which affects the contract of insurance, is notice to the company and binds the company to the same extent as though it had been given directly to the agent himself.   (*Arff* v. *Star Ins. Co.*, 125 N. Y. 57; *Bodine* v. *Exchange Ins. Co.*, 51 id. 117.)   The point, therefore, based on the condition as to the ownership of the insured property must be overruled.

Another question relates to the delay in serving proofs of loss.   The fire occurred October 10, 1883.   The proofs of loss were not received by the company until February 2, 1884, 115 days after the fire.   The policy provides that in case of loss "the assured shall give immediate notice thereof and shall render to the company a particular account of said loss under oath," embracing certain facts specified.   Under this clause it

became the duty of the plaintiff to furnish proofs of loss within a reasonable time. What is such reasonable time may become a question of law, as where there has been a long delay, unexcused, and the company has not waived a compliance with the requirement of the policy. But in cases where circumstances are shown which reasonably justify the delay, or the insured acted with reasonable promptness in view of all the facts disclosed, having regard both to his own situation and the protection of the company, it may be a question for the jury whether the provision as to proofs has been violated. So also, it is competent for the company either before or after the alleged delay to waive an insistence upon this clause and such waiver may be express or it may be implied from conduct, inconsistent with any intention to rely upon this defense. In this case it appears that notice of the fire was given by the plaintiffs to the company on the same day on which it occurred. Adjusters of companies represented by Mandeville came to the premises a few days afterwards and examined into the circumstances. The plaintiffs, according to their evidence, proceeded to procure a millwright and another expert to make estimates of the value of the machinery and property burned or injured. When this had been accomplished after considerable delay, the matter of preparing the formal proofs was put in charge of an insurance man who delayed the preparation for about a month. The principal plaintiff, after the fire and before the proofs were forwarded, was called to Philadelphia several times on important business connected with the delivery of cattle under contracts made by him before the fire, and was unable to give personal attention to the preparation and forwarding of the proofs. Under the circumstances it could not be ruled as a question of law that the delay in furnishing the proofs was unreasonable. The performance of the stipulation as to proofs of loss is not made a condition of liability of the defendant by the terms of the policy, but it is a condition of recovery. The furnishing of proofs of loss promptly may in many cases be important to the protection of the rights of the insurer against fraud, and

the company may insist upon prompt action by the assured. But when, as in this case, the matter was left open, under the obligations expressed in the policy without more, we cannot under the circumstances disclosed say as matter of law that the delay was unreasonable. We think also the insistence of the company upon the right to examine the plaintiffs under oath upon matters relating to the loss, made in the letter of February 20, 1884, and their subsequent examination by the defendant, was a waiver of any objection founded on the delay in serving proofs of loss. It is claimed that the demand contained in the letter was conditioned upon the assent of the plaintiffs that such examination should not be construed as a waiver by the company of the objection. The letter is at least equivocal. The plaintiffs could not safely refuse to submit to an examination, and the letter does not state that the company would dispense with examination in case the plaintiffs did not acquiesce in the condition. The points as to the proofs of loss and the exception of the defendant based thereon, are not we think tenable.

The remaining question relates to the claim that the plaintiff at the time of the insurance and of the fire, had no insurable interest in the building which was in part the subject of the insurance. It is doubtless true that the State Bank of Elizabeth, the vendor in the contract of sale to the plaintiffs, had no legal title to the property embraced therein. It was, however, the beneficial owner. The bank owned the mortgage and bid off the property on the foreclosure in 1877, but its agent at the sale, under advice of its attorney directed the conveyance to be made to Mr. Kean, the president of the bank, because of the statute of Pennsylvania which prohibited any foreign corporation from acquiring and holding any real estate within the commonwealth " directly in the corporate name or by or through any trustee or other devise whatever, unless specially authorized to hold such property by the laws of the Commonwealth." (Purdon's Dig. § 56, p. 292.) Mr. Kean paid nothing for the property and acknowledged that it belonged to the bank, and never made any claim to it

whatever.   He knew of the negotiation between the bank and Carpenter for the sale and purchase of the property and advised and consented to the contract by the bank, and was fully acquainted with the fact that Carpenter was paying the purchase money of the land, in reliance upon the ownership of the property by the bank.   The bank, Carpenter and Kean acted in good faith, supposing that the bank held the legal title to the land.   The officers of the bank had forgotten that the title had been taken in Kean's name and for this reason the contract with Carpenter was made in the name of the corporation.

We deem it unnecessary to go into the abstruse questions which have been argued at the bar, as to the legal and equitable right to the land, as between the bank and Kean, growing out of the conveyance to the latter of the legal title on the foreclosure sale.   Assuming (but without deciding) that the bank could not, in view of the Pennsylvania statute, have established a trust in its favor, enforcible against Kean, or compelled him to convey the legal title to the corporation, yet it is we think very plain that as between Carpenter on the one side, and the bank and Kean on the other, Carpenter on the performance of his contract could have maintained a suit in equity to compel the bank and Kean to convey the land. Kean would be bound by the plainest principles of equity and justice to make the contract good, which was entered into with his advice and upon which Carpenter had advanced his money.   It would be no answer that Kean did not act *male fide*, but supposed that the legal title was in the bank.   He stood by and encouraged the sale and knew of the payment of the purchase money by Carpenter in reliance upon the right of the bank to sell the property.   (*Storrs v. Barker*, 6 Jo. Ch. 166 ; *Continental Bank v. National Bank of Commonwealth*, 50 N. Y. 576 ; *Thompson v. Simpson*, 128 id. 270.) His mistake prejudiced no real right or equity in the land. He asserted none therein and now acknowledges that the bank is entitled to the benefit of the policy.   The principle of equitable estoppel applies with persuasive force against Kean,

preventing him from asserting as against Carpenter any right in the land and a court of equity would require him to convey so that the just expectations of Carpenter should not be disappointed. Carpenter had therefore, an insurable interest in the property.

The questions decided dispose of all the material points in the appeal.

The result is that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed. _____