NELSON C. SEAMAN, Plaintiff, v. JOHN LEONARDI et al., Defendants.

(Supreme Court, Queens Trial Term, February, 1920.)

Accounting — testamentary trustees — partition — evidence — deeds — estoppel — when complaint dismissed.

In an action for partition of lands conveyed by two of three testamentary trustees it appeared that upon the judicial settlement of the accounts of said trustees, instituted eight years after said conveyance, the full purchase price had been received and credited to the estate, and distribution was decreed to those entitled, of whom their co-trustee was one. Subsequently the other trustee, who neither joined in said conveyance nor was made a party to said accounting, instituted a separate proceeding for the judicial settlement of his accounts and charged himself with the exact balance charged against his co-trustees in their accounts. The action for partition was brought by one claiming an interest in the property by descent from the last accounting trustee. Held, that while there was no direct

evidence that said trustee, prior to his separate accounting, had any knowledge of the conveyance of the property by his co-trustees, his lack of such knowledge established his violation of duty as a trustee.

When he adopted the exact balance charged against his co-trustee, thereby asserting its accuracy, he was chargeable with knowledge of the items of charge and credit upon which said balance was judicially established by the decree, and said trustee and those in privity with him are equitably estopped from asserting any hostile claim as against the grantee in said conveyance and those in privity with him, and therefore the defendants are entitled to judgment dismissing the complaint upon the merits, with costs.

ACTION for partition.  Jury waived.

Morgan H. Seacord, for plaintiff.

Arthur P. Hilton, for defendants.

KAPPER, J.  Assuming that the deed of Giffing and Karstens, two of the three trustees of Clarkson Crolius, deceased, made March 1, 1893, to Dunton, was ineffectual to convey the interest in the property of Clarkson Crolius Seaman, I have reached the conclusion that the plaintiff is precluded under well-settled equitable principles from asserting any interest by virtue of his descent from said Clarkson Crolius Seaman, now deceased.  It appears that in April, 1901, eight years after the conveyance in question, the said Giffing and Karstens instituted in New York county a proceeding for the final judicial settlement of their proceedings as executors and trustees under the will of said Crolius, deceased.  Their account in such proceeding was verified April 8, 1901, was filed April 12, 1901, and was finally and judicially settled by decree of said Surrogate's Court dated May 20, 1901.  It is conceded that said co-trustee, Clarkson Crolius Seaman, did not join, nor was he a party to said accounting proceeding.  In Schedule A-2 of said account so

filed as aforesaid the said Giffing and Karstens charge themselves, in addition to numerous other items, with the receipt of the purchase price of said lots so conveyed by them to Dunton. The words and figures are " 1893 — Feby 28 — F. W. Dunton 4 lots, Jamaica,— $200." In " Schedules C, D & E-2," containing a statement of their disbursements, they credit themselves with the sum of $65.50, purporting to be the one-sixth part or portion of the proceeds of the sale of these and other lots to which said Seaman was entitled, being his distributive share as one of the six persons named in the residuary clause of said will. The credit reads, " 1893　Oct　3 — C.　C.　Seaman — 1-6　Sales　Lots — $65.50." The total receipts, including the said sum of $65.50, leave a balance of $566.65, with which said trustees charge themselves, and this balance is incorporated into and made a part of the summary statement contained in the decree which finally judicially settles and allows the said account. It further appears that the costs were duly taxed in said proceedings at the sum of $165.26, which said sum the trustees were authorized by said decree to retain and deduct from the said balance of $566.65. Shortly after the institution of this accounting proceeding by the trustees Giffing and Karstens, the said Clarkson Crolius Seaman began an entirely separate proceeding in the Surrogate's Court of New York county for the final judicial settlement of his account as such trustee. The proceeding is entitled, " In the matter of the judicial settlement of the account of Clarkson C. Seaman as one of the executors of Clarkson Crolius, deceased." The account was verified by said Seaman in California on May 2, 1901, about three weeks after the filing of the said account of his co-trustees, was filed July 19, 1901, and the final decree adjudicating the said account is dated June 16, 1902. John Henry Hull, the attorney

for said Seaman on this accounting, also acted as the attorney for said Giffing and Karstens in their accounting. In the summary statement of his said account Seaman charged himself as such trustee, " with amount last balance — $566.65 " — and this balance is also charged against him in the summary statement contained in the final decree made in said accounting. It will be observed that this is the exact balance charged against his co-trustees in their separate accounting. Moreover, in Schedule A, under the heading, " Statement of property sold, etc.," appears the following entry, " None, except as in former inventory filed." Under Schedule C, entitled " Money paid for funeral and other necessary expenses," appears the following: " None, except as in former accounting and J. J. Hull, services $165.26." This, it will be noticed, is the exact amount of the costs of the Giffing and Karstens accounting. In Schedule D, relating to claims of creditors, appears the entry, " None, except as in former acctg.," and in Schedule F-1, relating to persons entitled to share in the estate, appears the entry, " None, except as in former accounting." The defendant Leonardi contends that by virtue of the facts above disclosed the plaintiff is estopped from asserting his ownership of a seventy-second interest in this property, and I am inclined to agree with this contention. It is not disputed that the full purchase price was received and credited to the estate. As already shown, the trustees Giffing and Karstens are judicially charged with the receipt thereof and with the receipt of an additional sum representing the sale of other lots in Rockaway and are credited with the distribution of such proceeds to those entitled thereto, of whom said Clarkson Crolius Seaman is one. While there is no direct evidence that Seaman had any knowledge of the act of his co-trustees in selling said lots

at any time prior to his separate accounting, his lack of knowledge in this respect emphasizes his own negligence and establishes his own violation of duty as a trustee. If he expressly delegated the active management of the estate to his co-trustees Giffing and Karstens, he thereby violated the confidence reposed in him by the testator, for the duties of the trust required the exercise on his part of his personal judgment and discretion, and if he were merely remiss in that he carelessly refrained from active participation in the affairs of the estate and blindly trusted his co-trustees, then he is equally chargeable with official negligence. Eight years intervened between the sale of said lots by his co-trustees and his separate accounting in 1901. The exercise in a slight degree of the diligence required of him would have disclosed that his co-trustees had assumed to act alone in a discretionary matter requiring the joint participation of all the trustees. By contending, therefore, that Seaman was ignorant of the action of his co-trustees, the plaintiff seems to me to convict his ancestor of gross negligence in the performance of his fiduciary duties. While an estoppel may not usually arise against a person who is ignorant of his rights, yet the doctrine is not, I think, carried so far as to hold that ignorance, which is the result of negligence in a fiduciary capacity, bars the application of the equitable doctrine of estoppel. Seaman is chargeable with such knowledge as he should have acquired and must be judged accordingly. But aside from the question whether Seaman is chargeable with the knowledge he should have acquired during these eight years of the acts of his co-trustees, I think the separate account filed by him in 1901 discloses such knowledge. As already shown, in this accounting proceeding Seaman adopts the exact balance charged against his co-trus-

tees in their prior and separate accounting. This balance was fixed by the co-trustees by charging themselves with all moneys received, including the purchase price of the said lots, and crediting themselves with all disbursements, including an item purporting to be the *pro rata* share of the sale of these and other lots to which Seaman was individually entitled as one of the six persons named in the said residuary clause of said will. When Seaman adopted and thereby asserted the accuracy and correctness of this final balance, he is necessarily chargeable with knowledge of the items of charge and credit upon which said balance was founded and judicially established by decree of the Surrogate's Court of New York county. He could not adopt such balance and disclaim knowledge of the arithmetical processes upon which it was based. His own account, as to him at least, imports verity. I think the account in other respects shows that Seaman at this time had actual knowledge of the acts of his co-trustees. Thus in Schedule A the statement is made that no property has been sold except as in "former inventory filed," etc. I think this is clearly a reference to the account filed by the co-trustees. It is certainly not a reference to the inventory provided for in Code section 2665, for that inventory is filed before the disposition of any property whatsoever. Again, in Schedules D and F specific reference is made to "former accountings." There is no evidence that Seaman ever filed any other account. This fact, together with the reference in Schedule C to the sum of $165.26, the amount of the costs in the accounting of his co-trustees, leads irresistibly to the conclusion that the word "inventory" and the words "former accounting" refer to the said account of his co-trustees. I have therefore reached the conclusion that Seaman had full knowledge of the acts of his

co-trustees when he filed his separate account in 1901. If this be so, it was clearly even then his duty, if he desired to repudiate the acts of his co-trustees, to so notify the grantee or those claiming under him and immediately resort to such legal or equitable remedies as might afford relief from the situation created, in part at least, by his own negligence. At this time Seaman knew that he had not joined in the execution of said conveyance; he then knew that he had never transferred his individual interest in these lots; he then knew that the grantee (or those claiming under him) was then in possession and exercising acts of ownership over property for which he had paid and for which the estate had received a full and adequate compensation; he then knew that his co-trustees had accounted for the proceeds thereof and that they claimed to have distributed the proceeds of said lots to those entitled thereto, including himself, and he then also knew that the claim of his co-trustees in this respect had been judicially determined by the final decree of a court of competent jurisdiction. Yet, having acquired such knowledge, at least at the time of his accounting, he never disaffirmed the action of Giffing and Karstens or made any protest whatsoever either to them, to the grantee or to those claiming under him. On the contrary, he approved and accepted the action of his co-trustees by adopting the final balance of their account as the starting point of his own separate account. He adopted said final balance and then set forth only such matters as related to his own subsequent action as trustee. While he could not by ratification validate a void act, he could and did, with the knowledge disclosed by his separate accounting, approve, ratify and accept the result of the transaction by which the purchase price inured to the benefit of the estate. And there is no evidence

that from the time of his accounting to the time of his death he ever protested the action of his co-trustees, or denied the receipt by them of the purchase price, or that he had received his *pro rata* share thereof. While he did not actively advise or authorize the acts of his co-trustees, yet he did remain passive and acquiescent when it was his duty to speak and protest. Up to the time of his death, I think, the equities were in favor of the grantee as against Seaman. The grantee could, it seems to me, have successfully maintained an action to compel a conveyance of Seaman's outstanding interest in the property. *Carpenter* v. *German American Ins. Co.,* 135 N. Y. 298, 305; *Storrs* v. *Barker,* 6 Johns. Ch. 166, 174; *Favill* v. *Roberts,* 50 N. Y. 222, 226, 227. However this may be, I think that Seaman and those in privity with him are estopped under the circumstances disclosed from asserting in equity any hostile claim as against the grantee and those in privity with him. '' Where one, without title or authority from the real owner, assumes to sell and convey the land in fee and the true owner, knowing the facts, consents to and does accept the proceeds of the sale in full satisfaction of his interest, this ought in equity to operate as a confirmation of the unauthorized sale and preclude the real owner from asserting his legal title. The sale in the case supposed may be treated as his act, or at least it may operate in connection with the receipt of the purchase money as an agreement on his part to sell to the purchaser and as a payment by the latter to the true owner of the consideration.'' *Thompson* v. *Simpson,* 128 N. Y. 292. Judgment for defendants dismissing the complaint upon the merits, with costs.

Judgment for defendants, with costs.