ANTHONY CACCAMISE, as Limited Administrator, etc., of STELLA A. CACCAMISE, Deceased, Respondent, v. METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK, Appellant.

Fourth Department, November 23, 1937.

*Justin J. Doyle*, for the appellant.

*George J. Skivington*, for the respondent.

SEARS, P. J. Plaintiff's intestate met her death by being struck by an automobile owned and driven by Stewart Lampman. In an action brought against Stewart Lampman for the damages resulting from the intestate's death, the plaintiff recovered a judgment. Execution issued on the judgment has been returned wholly unsatisfied by reason of the insolvency of Stewart Lampman and plaintiff has now recovered in this action against the defendant as the insurer of Stewart Lampman under the provisions of section 109 of the Insurance Law.

The defendant contends that it was not the insurer of Stewart Lampman; that no contract of insurance relating to the automobile involved in the accident was entered into by the defendant, and it is, therefore, necessary to consider the facts upon which the plaintiff relies as establishing such a contract. The precise questions in this respect are whether Nelson B. Read, a soliciting agent of the defendant, had authority to bind the company by an oral agreement to insure and whether Latham H. Lampen, an underwriting agent of the defendant, accepted the application which Read reported to him.

No written policy was ever issued. The defendant admits that Nelson B. Read was its agent for some purposes, but asserts that he was not authorized to bind the company by a contract of insurance.

Henry L. Lampman, the father of Stewart Lampman, was an acquaintance of Read's of long standing. On April 18, 1935, when a policy of casualty insurance which Henry Lampman had with the defendant expired, it was Read who brought out to Henry L. Lampman a renewal policy and after exercising persuasion, succeeded in procuring its acceptance by Henry L. Lampman. At that time Read collected the premium from Henry L. Lampman and wrote a receipt on the renewal policy. About a week before February 26, 1936, Stewart Lampman bought a new car which, however, was not driven until February 27, 1936. On February 26, 1936, Henry L. Lampman, according to his testimony, communicated with Read by telephone and as a result of the talk, on the evening of that day, Read came to the Lampman home and had a conversation with the Lampmans, father and son. Henry L. Lampman at that time told Read that Stewart had purchased a car and wanted insurance on it and Stewart in reply to questions gave Read the usual information as to the car, its number, type and so forth, and as to the age of Stewart, which was twenty years. When this was done, Henry questioned Read as to just when the policy would take effect. He told Read that he did not want his son to drive until he was insured. Read explained quite in detail

that the policy would take effect at twelve-one A. M. the next morning. There was talk about the limits of liability and these were agreed upon. Henry Lampman offered to pay the premium, but Read said to pay when the bill came through. Read in his testimony amplifies this account of the conversation, and his amplification is not disputed. According to Read, what he said to Henry and Stewart Lampman was, " I have no authority to bind the company tonight. * * * I will phone it [the information about the insurance] in to the company tomorrow morning at 9 o'clock and you will be covered from that time on. * * * The policy will bear the time of 12:01 A. M." according to the standard clause in all policies. Read was asked when the effective date was and replied " 12:01 A. M., February 27, 1936."

It further appears from the testimony of Read that at nine o'clock on the following morning Read did telephone the local office of the defendant and talked with Latham H. Lampen whose position was known as that of " underwriter," and whose duties included the acceptance and rejection of risks for the defendant. In the conversation between Read and Lampen, Read testified that he told Lampen that he had an order for an automobile policy and gave him the name and address and motor number, type of car, the limits of the risk and the effective date, and said " effective today," and Lampen on hearing these various statements, including " effective today," said " O. K." Read continued to give Lampen the details of the order and told Lampen that the age of the owner of the motor car was twenty years and that he was a student in " Edison Tech." Lampen said, " Oh, oh, student risks are not so hot. * * * All those policies are submitted to the home office before they are written." Read also testified that it was his custom, when he called the office, to tell the underwriter the effective day, and that policies were always written as effective at twelve-one in the morning of the effective day even when the effective day was the day of the notification, and that in about two hundred cases during the previous three years he had telephoned in respect to applications of this general kind. Except for a discussion between Read and Lampen as to the desirability of " student risks," the foregoing is the substance of the entire conversation at that time as it appears in the testimony. At half past three in the afternoon of the same day, Read according to his testimony again called Lampen on the telephone and said to him, " If the company would rather have it [the risk] in the father's name, why write it that way," and immediately after this conversation between Read and Lampen, Read called Henry Lampman on the telephone, told him the company did not like student risks very well and

asked him if he would be willing to have the car licensed in his name. This Henry Lampman said he was unwilling to do. Lampen's testimony as to the second conversation with Read was excluded.

The accident occurred at five o'clock in the afternoon of February 27, 1936.

Read had his own office not at the defendant's general office but with the National Life Insurance Company with which he conducted his primary insurance business. In addition to this he was a soliciting agent for the defendant and for the Merchants Mutual Casualty Company. Soliciting automobile insurance for the two companies was incidental to his life insurance business and "works in with it." At the time of the occurrences here involved Read held a certificate of agency authority from the Superintendent of Insurance of the State of New York in which it was certified that Read was authorized to act as agent for the defendant "in and about the exercise of such powers as said Company may confer upon such agent."

The jury was instructed in substance that they might find that Read had authority to bind the defendant by accepting Stewart Lampman's application and that they might find that he did in fact accept the risk and thereby bound the company by an oral contract. Unless the evidence justifies the finding that Read had such authority, the judgment cannot stand. While Read was allowed to testify that he had made a statement to the claim agent of the defendant that he thought the company " had — was on the risk," he does not purport to give any basis for such impression except in the testimony already referred to. He gives no details whatever of his employment, except to say that he was a soliciting agent for the defendant and that all but two of about two hundred applications which he had reported to the company had been accepted by the company and were effective from the morning of the date when he reported that they were to be effective. The statement of Read's impression does not bind the company any more than would other statements as to his authority made by himself. The fact that his applications were in general accepted and that they were numerous establishes nothing beyond the fact that he secured many applications which in general the company was willing to accept. The delivery of the policy to Henry L. Lampman in the previous year was the delivery of a written policy previously approved by the company itself and was by no means a representation of authority to bind the company to an oral contract.

There was no holding out of Read by the defendant as having any authority other than that expressly intrusted to him including incidental power to do anything reasonably necessary for the performance of his duty. (Restatement of Law of Agency, § 35; *Arff* v. *Star Fire Ins. Co.*, 125 N. Y. 57; *Barone* v. *Ætna Life Ins. Co.*, 260 id. 410.) In general such a soliciting agent does not have authority to accept risks. (*Allen* v. *German American Ins. Co.*, 123 N. Y. 6; *Northrup* v. *Piza*, 167 id. 578, affg. 43 App. Div. 284; *Drennan* v. *Sun Indemnity Co.*, 271 N. Y. 182; *Shank* v. *Glens Falls Ins. Co.*, 4 App. Div. 516; *Brown* v. *Dutchess County Mut. Ins. Co.*, 64 id. 9; *Matter of Lane* v. *Lane*, 229 id. 50.) In some of the cited cases the authority of so-called brokers was involved but the description of the person as a " broker " is not conclusive. A soliciting agent may often be designated by that term. (*Arff* v. *Star Fire Ins. Co.*, *supra*.) We conclude that there was error in allowing the jury to find that Read had authority to bind the company by an acceptance of the risk.

The jury was also permitted to predicate liability upon a finding of an oral contract agreed to by Lampen. As the record stands the first conversation between Read and Lampen was at least ambiguous as to Lampen's acceptance of the risk proposed. Under the circumstances it was the defendant's right to prove the second conversation between Read and Lampen to aid in the construction of the first talk. This right was erroneously denied.

The court erred in admitting the certificates of agency other than the one relating to the time and business in question. This error alone might not call for reversal.

If Read's written statement which was excluded on plaintiff's objection was contradictory of his testimony, it should have been received. (*Larkin* v. *Nassau Electric R. R. Co.*, 205 N. Y. 267; *Hanlon* v. *Ehrich*, 178 id. 474; *O'Connor* v. *International Railway Co.*, 213 App. Div. 411.) We have not this statement before us and cannot judge with certainty of its character.

The judgment and order should be reversed on the law and the facts and a new trial granted, with costs to the defendant to abide the event.

All concur. Present — SEARS, P. J., EDGCOMB, CROSBY, LEWIS and CUNNINGHAM, JJ.

Judgment and order reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.