# OCTOBER TERM, 1892.

JAMES A. STEELE v. THE GERMAN INSURANCE COMPANY OF FREEPORT, ILLINOIS.

*Fire insurance—Conditions of policy—Proofs of loss—Notice to agent.*

1. Time is not made of the essence of the provision of the Michigan standard fire insurance policy requiring proofs of loss to be rendered within 60 days after the fire; and the further provision that no suit can be brought on the policy "until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire," refers to the requirements as to notice, proofs, and adjustment of the loss, and its intent is to provide that no suit can be maintained unless commenced within one year after the fire, and in no event until after compliance with such requirements.

2. The following propositions are summarized from the opinion of Mr. Justice GRANT, in which MORSE, C. J., McGRATH and MONTGOMERY, JJ., concurred:

   *a*—Insurance agents, in making out applications for insurance, represent the company, upon which must fall the consequences of the agent's failure to incorporate in such application the honest statements of the insured regarding existing insurance.

   *b*—The acts of clerks of insurance agents who solicit insurance, make out applications and policies, and generally attend to the business of their employers, are as binding as though done by the agents themselves.

Error to Ionia. (Smith, J.) Argued April 12, 1892. Decided October 4, 1892.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*George S. Steere,* for appellant.

*Davis & Nichols,* for plaintiff.

McGRATH, J.   This action is upon a Michigan standard policy, which contains the following provisions:

"The sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy.   *   *   *   *   *   *   *   *   *   *

"If fire occur, the insured shall give immediate notice of any loss thereby in writing to this company,   *   *   *   and within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement" ordinarily denominated "proofs of loss."

"The loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company."

The policy contains a number of other distinct paragraphs limiting the liability of the company. One provides that the entire policy shall be void if the insured has concealed or misrepresented any material fact, or if he has misrepresented his interest, or in case of any fraud or false swearing by the insured touching any matter relating to the insurance or the subject thereof, whether before or after the loss; another declares that the entire policy shall be void upon the happening of any one of 14 contingencies; another provides that "this company shall not be liable for loss" in a number of enumerated cases; another that in a certain contingency the insurance shall cease; another that the company shall not be liable for losses to certain classes of property, enumerating them, unless, etc.   Then follows the provision that—

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

This latter provision clearly refers to such requirements in the policy as relate to the notice of loss, proofs, and adjustment of the loss; and its evident intent is to provide that no suit can be maintained unless commenced within one year, and in no event until after compliance with such requirements. The use of the words "until after" distinguishes this case from *Gould v. Insurance Co.*, 90 Mich. 302, and brings it within the rule laid down in *Tubbs v. Insurance Co.*, 84 Mich. 646. The effect of misstatement, of changed condition and contingency, of omission and commission, of fraud and false swearing, is explicitly declared in each other paragraph in which the act, omission, or contingency is referred to; even the effect of false swearing in the proofs of loss is specifically declared; but the paragraph relating to proofs of loss suggests no penalty. This omission in an instrument replete with clear and explicit declarations of forfeiture is worthy of note. The presence of the declaration of forfeiture in every other instance, and its absence in this, is clearly not an oversight. Time is not made the essence of the provision relating to proofs, and in the paragraph relied upon by defendant the words "until after" import order or sequence, rather than an intent to make performance within the time specified the essence of the requirement. The selection of this phraseology seems to me inconsistent with such a purpose. The language has reference to the thing to be done before suit brought, rather than the time within which it is to be done. It is therefore unnecessary to consider the question of waiver.

Upon the other points I concur with Mr. Justice GRANT, and the judgment should be affirmed, and it is so ordered.

MORSE, C. J., and MONTGOMERY, J., concurred with McGRATH, J.

GRANT, J. (*dissenting*).   This is an action to recover upon a policy of insurance for loss by fire.   Four objections are raised against the judgment, viz.:

1. Plaintiff, in his application, represented that there was no other insurance upon the property.

2. There was other insurance without the consent of the defendant.

3. Proofs of loss were not made and rendered within 60 days after the fire.

4. Recovery was allowed for goods not covered by the policy.

1. The evidence on the part of the plaintiff showed that defendant's local agents who placed this insurance had also placed the other insurance complained of; that they knew it at the time; that plaintiff, at the time of the making of the application, so informed them; and that the defendant's agents, through their clerk, wrote out the application.   It is the settled rule in these cases that the agents for insurance companies, in making out these applications, do not represent the insured, but the insurer, and that the consequences of the failure to incorporate the necessary statement in the application must fall upon the insurer, and not upon the insured, who has made an honest statement of the facts.   *Russell v. Insurance Co.*, 80 Mich. 407; *Gristock v. Insurance Co.*, 84 Id. 161, 87 Id. 428; *O'Brien v. Insurance Co.*, 52 Id. 131.

No question of waiver upon the first two points is involved.   The clerk of the local agents wrote out the application, and to him plaintiff said that there was no other insurance except what they themselves had placed upon the property.   This testimony was objected to as incompetent, upon the ground that the acts of and statements made to and by said clerk were not binding upon the defendant.   The precise claim is that the local agents

cannot redelegate their authority to clerks, unless such authority to redelegate is conveyed in express terms. In general, this is true, but courts will recognize the ordinary course of business. It must be well known that these local agents do their business to a very large extent through clerks, who solicit insurance, make out applications and policies, and generally attend to the business of their employers. In such cases their acts are as binding as though done by the agents themselves. Story, Ag. § 14; *Insurance Co. v. Ruckman*, 127 Ill. 364 (20 N. E. Rep. 77); *Bodine v. Insurance Co.*, 51 N. Y. 117; *Bennett v. Insurance Co.*, 70 Iowa, 600 (31 N. W. Rep. 948).

2. This was a Michigan standard policy, and contained the following provisions:

"If fire occur, the insured shall give immediate notice of any loss thereby in writing to this company; * * * make a complete inventory of the property, stating the quantity and cost of each article, and the amount claimed thereon; and within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof, and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession, or exposures of said property since the issuing of this policy; by whom and for what purpose any building herein described, and the several parts thereof, were occupied at the time of fire. * * *

"This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal, or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice * * * and satisfactory proof of the loss herein required have been received by this company. * * *

"No suit or action on this policy for the recovery of any

claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire.    *    *    *

"This policy is made and accepted subject to the foregoing stipulations and conditions,    *    *    *    and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

The fire occurred March 12, 1890, and proofs of loss were not furnished until October 20, 1890, three days before suit was commenced.    It is insisted that proofs of loss within the time required by the policy were waived.    The facts upon which the alleged waiver was based are as follows: Immediately after the fire, plaintiff notified the local agents by telegram, and received a dispatch in reply.    Two days after the fire the local agents· sent one of their employés to the plaintiff.    They went to the place of the fire, and the employé asked plaintiff how it occurred, to which plaintiff replied he would like to know himself.    Plaintiff then testified:

"We looked it over, and he asked me if I had a statement of what was burned; I told him I had.    'Well,' he says, 'you may take a copy of it, and send it to our office, and I will notify the companies, and they will send an adjuster to adjust the loss; and it might be such a thing that Mr. Weatherwax will adjust it.'    He didn't say that he would, but he thought it might be such a thing that Mr. Weatherwax would adjust the loss.    After this conversation I made out a statement, and sent it to Stanton, to Weatherwax & Co. [the local agents]."

March 22, the local agents acknowledged the receipt of

this statement by letter, and wrote, "We have notified the companies, and expect prompt attention." April 11, the local agents again wrote plaintiff, saying:

"The insurance companies have authorized Mr. O. C. Kemp, of Greenville, to settle your loss. I just heard of it to-day. Now, if you will write him at Greenville, you can, I presume, arrange with him the time to come to Stanton, and meet at our office, and settle up your loss."

Mr. Kemp was not the agent or adjuster for the defendant, and had no authority to act for it. He represented the Hibernia Insurance Company, which had the other and prior policy upon the same property. About three weeks after sending the invoice to Weatherwax & Co., plaintiff met Mr. Kemp, and had a talk with him about the loss. He says that Kemp did not say anything to him particularly as to what company he was working for; that Kemp told him to send to Weatherwax & Co. for the invoice; that he would be back again in a couple of days; that meantime he would communicate with the other company; that after he returned from Detroit, where he was going to adjust a loss, he would meet plaintiff, and settle the matter with him. Not hearing from Kemp for a week or 10 days, he wrote him again, stating that he had got the invoice, and would like to meet him; and, receiving no reply, he wrote him again, but received no reply to this letter. He did nothing further until the last of August, when, in the office of the local agents, one of their employés asked him if he had settled with the company, and, upon being informed that he had not, the employé said that they had notified the company, and thought it very queer that they had not settled the loss. On cross-examination plaintiff testified that before he saw Kemp he supposed that he represented both companies, but that before Kemp left he understood that he appeared for one company,—the Hibernia. When asked what caused him to delay sending proofs

to the defendant, he replied, "Well, I kept waiting,—waiting to see their adjuster."

It is not claimed that plaintiff did not know the requirement of his policy as to furnishing proofs of loss. It was a part of his contract which he was bound to perform, if not waived. It conclusively appears from his own testimony that he had no conversation or communication with any officer of the company authorized to adjust his loss or waive the proofs. It is also evident that he knew this. This case is therefore clearly distinguishable from *Gristock v. Insurance Co.*, 84 Mich. 161, where the adjuster had agreed with the insured upon the value of most of the property, and had agreed upon arbitration as to the rest; and from *Young v. Insurance Co.*, 92 Mich. 68, where the insured offered what he termed "proofs of loss" to the adjuster, who assured him that he did not care for them, and that they were not necessary. The language of this Court in *Cleaver v. Insurance Co.*, 65 Mich. 532, 533, is applicable here. Under this record, there is, in my judgment, no room for serious contention that this requirement of the policy was waived.

3. Did the failure to furnish proofs of loss avoid the policy? I think the question must be answered in the affirmative, according to the rule recognized by this Court in *Gould v. Insurance Co.*, 90 Mich. 302. The clause in that policy was, "No suit or action * * * shall be sustainable in any court of law or equity unless the insured shall have fully complied with all the foregoing requirements," among which was one requiring proofs to be furnished within a specified time. The clause in this policy differs only in that it uses the word "until" instead of the word "unless." It is suggested that by the use of the word "until" the contract should be construed to mean that the insured cannot bring a suit within the 60 days without furnishing the proofs, but that he may bring his suit at any time after

that within the year upon furnishing proofs. I am unable to concur in this view. Under such construction, this important condition to be performed by the insured would be useless to the insurer. Of what use or benefit to the defendant in this case were the proofs of loss furnished to it only three days before suit was brought? The condition is a reasonable one, and the reasons for it are too obvious to require mention. This policy was issued in accordance with the requirements of the statutes of this State. How. Stat. §§ 4344–4353. The contract, besides being the deliberate meeting of the minds of the parties, is expressly directed and authorized by this law. Certainly the insured should be required to comply with it as well as the insurer. No one can misunderstand his obligation under such a contract. Every man of sense would at once recognize his duty under it. To hold as suggested would be to say that the insured may furnish his proofs at any time within 12 months,—that being the time limited for the bringing of suit,—provided only that he furnish them before he brings his suit. This would be making a contract for the parties, instead of interpreting one that they themselves have made under the express provision of the law; and especially is this true in the light of the provision that any extension of time must be in writing. *Blossom v. Insurance Co.,* 64 N. Y. 162.

4. In view of the possibility of a new trial, one other point will be determined. The property covered was described as "a stock of dry goods, groceries, hardware, queensware, hats, caps, boots, shoes, and such other articles, not more hazardous, as are usually kept for sale in country stores." It is insisted that a portion of the goods destroyed consisted of lumbermen's tools, second-hand furniture, and camp equipment, which cannot come under the head of merchandise, and that they were stored in the building merely for safe-keeping. There was a conflict of evidence as to the

character of this property, and the question was properly left to the jury, the court instructing them that, if they found any of the articles did not come within the class of goods mentioned, the plaintiff could not recover for them.

Judgment should be reversed, and a new trial ordered.

LONG, J., did not sit.