## MORRIS *v.* ORIENT INSURANCE COMPANY OF HARTFORD, and *vice versa.*

1. In no view of the facts and circumstances brought to light upon the trial of this case can it be fairly said, either that the defendant insurance company waived, or that it was estopped to set up in its defense, a violation of an express stipulation in the policy issued to the insured, to the effect that the same should become void in the event he should thereafter, without first procuring the company's written consent to be indorsed upon or attached to the policy, take out additional insurance covering in whole or in part the same risk. This being so, the trial judge erred in instructing the jury, in substance, that should they believe the testimony relied on by the plaintiff in this connection, it would be their duty to find against this particular defense interposed by the company.

2. Further error was committed in eliminating from the consideration of the jury the additional defense set up by the defendant, that at the time the policy sued on was issued to the insured he was not the owner of the property therein specified.

3. As to all other questions raised by the company's motion for a new trial, this case is controlled by the decision this day rendered in *Morris* v. *Imperial Insurance Co.*

Argued November 15, 1898. — Decided February 11, 1899.

Action on insurance policy. Before Judge Spence. Sumter superior court. May term, 1898.

*E. A. Hawkins*, *Allen Fort* and *DuPont Guerry*, for plaintiff.

*Glenn, Slaton & Phillips* and *Hooper & Crisp*, for defendant.

FISH, J. This case, which makes its appearance here by both a main and a cross-bill of exceptions, and that of *Morris* v. *Imperial Insurance Company* (reported supra, 461), were by agreement of counsel consolidated and tried together in the lower court, as in many respects the issues presented for determination were common alike to both. Upon reaching this court on separate writs of error, they were, by like consent, argued together. For convenience, however, it has been deemed proper by us to deal with them in separate opinions. In the opinion above referred to as having been filed in the Imperial Company's case, all the questions presented by the record now under consideration are fully covered, with the exception of the two herein specifically dealt with, which arose only in the case against the Orient Company.

1. The policy issued by this company contained a stipulation to the effect that, unless otherwise provided by an agreement indorsed upon or added to the policy, it should become void in the event the insured should procure any additional insurance upon the property covered thereby in whole or in part. The insured did subsequently procure the Imperial Company to issue to him another policy, covering the identical stock of goods which the Orient Company had already insured, and this fact was set up in defense to the action filed against the latter company. In reply, it was asserted by the plaintiff that the defendant had waived its right to insist upon this stipulation, having, through its agent, expressly consented that the insured might, if he increased his stock later on, take out sufficient additional insurance to protect him. In support of this contention, Samuel Morris, a brother of the insured, who had in the latter's behalf conducted the correspondence with the company's agent whereby the insurance was effected, was introduced as a witness. Over the defendant's objection, counsel for the plaintiff was permitted to put to this witness the inquiry: "At the time you got this policy that is now issued, did you write Mr. Cobb, or have anything in the letter about getting other insurance on that stock when you increased your

stock of goods in the fall? What notice did you give him of your intention to take other insurance or other policies?" To this question, the witness replied: "I wrote him, if he would give me a policy as cheap as possible in the fall, when he [the insured] increased his stock, I would give him [the agent] more, and he answered me that he would be glad to have it." This occurred in August, concurrently with the issuance of the policy. We do not think this testimony can be justly regarded as having the effect claimed for it by the plaintiff. In our opinion, it falls far short of proving the waiver sought to be shown. Nor is any material strength added thereto by the additional somewhat incoherent statement made subsequently by the witness in the course of his examination, as follows: "I gave Mr. Cobb notice, at the time of effecting this policy sued on, that Joseph Morris intended to take other insurance on that stock. I wrote him that in the fall I was going to take more insurance—when my brother will have more stock, I will give him more insurance on that stock; and he answered that he would be glad to have it." The proposition submitted to the agent seems to have been simply that, on the stock being increased in the fall, his company, through him, would be asked to issue additional insurance; and the reply of the agent can not be tortured into an express or implied consent that the insured might apply for and obtain additional insurance from any other company he chose to select, without consulting the defendant's agent as to the amount of concurrent insurance which would be permitted in view of the increased value of the stock of goods which the insured expected to have on hand later on. Evidently the agent intended merely to convey the impression that, if called upon at the proper season, he would grant additional insurance to such an extent as, in his judgment, the increased value of the stock then on hand justified; and the insured was not warranted in placing any other construction upon the agent's reply, especially as it was not hinted in the proposition submitted to him that the insured intended, without further consulting such agent, to take additional insurance in an entirely different company not represented by him. Besides, the policy issued by the defendant company

expressly stipulated that its assent to concurrent insurance should be evidenced by a writing indorsed upon or attached to the policy itself. In this connection, the case of United Fireman's Insurance Co. v. Thomas, 72 Fed. Rep. 406, is in point, it being therein ruled that: "Knowledge by the agent of an insurance company, at the time of procuring the insurance, that the insured intended to take out other insurance, does not operate as a waiver of a condition in the policy subsequently delivered, forbidding other insurance except by consent of the insurance company indorsed on the policy. The rule that a prior parol understanding or agreement can not control a subsequent contract applies, and the waiver, to be effectual, must be subsequent to the written contract, and must be made, not only with knowledge of the other insurance, and with intent to waive the condition, but must be supported by a valuable consideration, or become operative by way of estoppel." Certainly there was no "waiver" in the present case; nor, in view of the facts above stated, can it fairly be said this is a case calling for the application of the doctrine of equitable estoppel. "The only case where a representation as to the future can operate as an estoppel is where it relates to the purposed abandonment of an existing right, and was intended to influence, and has influenced, the conduct of the party to whom it was made. A promise as to future action, touching a right dependent upon a contract to be thereafter entered into, does not create an estoppel." Insurance Company v. Mowry, 96 U. S. 544.

The Supreme Court of Indiana, dealing with this question, has held: "In an action to recover on a policy of fire-insurance, stipulating that 'if the assured shall have or shall hereafter make any other insurance on the property insured, or any part thereof, without the consent of the company hereon written, this policy shall be void,' a complaint alleging that after the policy was executed an agreement was made that other insurance might be taken, and that a written stipulation to that effect would be inserted in the policy, and also showing that other valid insurance was taken without any notice to the company or request to insert the stipulation agreed upon, does not show a waiver of the condition against further insurance, or

estop the company to insist that there has been a breach of such condition, and is bad on demurrer." Havens *v.* Home Insurance Co., 111 Ind. 90. In this connection, Mitchell, J., who pronounced the decision of the court, pertinently remarked (page 98): "While we concur in the suggestion that courts incline toward such a liberal construction of insurance contracts in favor of the assured as, if possible, to avoid a forfeiture, yet where parties have, without fraud, mistake, or surprise, deliberately entered into a contract, that alone must be looked to as furnishing the measure of their respective rights and obligations. . . Courts can not by construction compel insurance companies to assume obligations which they have fairly guarded against, in order to protect themselves against imposition, so that their solvency may be legitimately preserved in order to afford indemnity to policy-holders who observe their contracts." Our attention has been called to the case of *Carrugi* v. *Atlantic Fire Ins. Co.*, 40 *Ga.* 135, relied on by the plaintiff, in which it was held that notwithstanding a policy of insurance contained a stipulation that the consent of the company to concurrent insurance must be evidenced in writing, still if "the policy-holder notified the agent of the company that he would get additional insurance, and the agent consented, and the insured acted upon that consent and purchased the insurance," the company would be estopped from thereafter setting up the defense that the policy was thus rendered void, "although the consent of the agent was not in writing." It is to be observed that this court based its ruling in that case expressly upon the ground that the agent, so far as appeared, had full authority to waive the condition in question; for it was held that: "An agent of an insurance company authorized to make and revoke contracts of insurance is the proper person to give consent to the procuring of new insurance, *unless his powers be restricted by the company in this respect, and the insured have notice of the restriction.*" The policy now before us, with notice of the conditions of which the insured was chargeable, expressly stipulates that no representative of the company shall be deemed to have the power to waive any condition or provision "except such as by the terms of this policy may be the subject of agree-

ment indorsed hereon or added hereto; and as to such provisions and conditions, no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached." This stipulation, which would seem to fully meet the requirement stated in the decision above quoted, expressly negatived the power of any agent, by idle speech or even express parol promise or consent, to waive or barter away the rights of his principal which the latter had taken express pains to have incorporated in its written contract. It is to be observed that *Carrugi's* case was distinguished upon this ground in *Western Assurance Co.* v. *Williams*, 94 *Ga.* 132. Could the insured, thus having notice of the restricted authority of the agent who wrote the policy, rely upon even a definite and distinct verbal consent to additional insurance, and be misled thereby so that it would be a fraud upon the insured for the principal to insist that it was not estopped from making the defense that the insured, assuming to act upon a verbal agreement which he was legally bound to know would not justify his conduct, voluntarily and deliberately violated the terms of the policy? This question has been confidently answered in the negative by the New York Court of Appeals. Quinlan v. Insurance Co., 133 N. Y. 356. But however this may be, it is clear that in the present case not even a verbal consent on the part of the company's agent was shown. The case of *City Fire Insurance Co.* v. *Carrugi*, 41 *Ga.* 660 (followed in *Swain* v. *Macon Fire Ins. Co.*, 102 *Ga.* 96), was also cited, but is not even remotely in point, the ruling therein being merely that where an agent knew, when he wrote a policy, of then-existing prior insurance, his knowledge was notice to the company, which would be deemed to have waived its right to forfeiture on the ground that no indorsement as to prior insurance was entered on the policy itself.

This brings us to a consideration of the further contention of counsel for the plaintiff, that as the defendant company, after the insured had taken out a policy in the Imperial Insur-

ance Company the following October, was promptly notified of this fact by letter, but made no response thereto, offered no objection, and did not propose to return any portion of the premium or insist upon the cancelation of its policy, it had estopped itself from interposing the defense set up to the plaintiff's action.   In other words, counsel's idea seems to be that if, after the mischief has been done which the policy expressly provides shall render it void, the insured promptly notifies the company that he has deliberately violated its terms, it is incumbent upon the company to offer to return the unearned premium, insist that the policy — already rendered void by the act of the insured — be canceled, and expressly notify him it expects to hold him to the terms of his agreement; and, failing to do so, the policy remains of full force and effect, notwithstanding the provision therein that the act of the insured in procuring without consent additional insurance shall, without more, have the effect of rendering the policy void.   This presents the question whether, as the contract seems to provide, a violation by the insured of the terms of the policy will render it "void," or, as is insisted by counsel, merely *voidable* at the election of the company, which, in order to avail itself of the breach of contract by the insured, must offer to return the unearned premium and demand a surrender and cancelation of the policy. We find that the policy itself provides that in the event it shall "become void or cease, the premium having been actually paid, the unearned portion shall be returned *on surrender of this policy* or last renewal, this company retaining the customary short rate."   We shall not, however, undertake to enter upon a further discussion of the plaintiff's contention, with a view to definitely passing upon the merits thereof from a legal standpoint.   Really, he is not entitled to invoke a decision upon this point, for the reason that, in the court below, he failed signally to establish the facts upon which this contention is based.   It was shown that a letter, written by Samuel Morris in behalf of the insured, was addressed and mailed to Mr. Cobb, the agent of the Orient Company, informing him that another policy had been taken out with the Imperial.   In reply thereto, a letter was received from a clerk in Mr. Cobb's

employ, acknowledging receipt of the communication addressed to him, the writer saying: "Mr. Cobb isn't at home, but I will inform him as soon as he comes." Nothing further was heard either from this clerk or from Mr. Cobb himself. No attempt was made to show that the writer of the letter last above referred to was in any sense the agent or representative of the insurance company of which Mr. Cobb was the agent. On the contrary we gather from the meager testimony brought out in this regard that this person was merely a clerk in the service of the agent, not in the employ of his principal in any capacity. It was imperative that the plaintiff should prove notice to an agent authorized to represent the company; otherwise, notice to the person actually served could not be regarded as constructive notice to the company itself. *Greenwich Insurance Company* v. *Sabotnick*, 91 *Ga.* 717. Even if, upon the showing made, a presumption could have arisen in favor of the plaintiff that this clerk, in discharge of the duty he owed his employer, delivered to Mr. Cobb the letter received from Morris, any such presumption was fully overcome by the evidence for defendant. The company introduced as a witness Mr. Cobb, who swore unequivocally that he did not know until some time after the fire that the insured had taken out additional insurance, when he for the first time derived knowledge of this fact from a source entirely different from the letter. No effort was made to impeach this witness, nor was any evidence introduced by the plaintiff tending to throw discredit upon his testimony. This being true, the jury were not authorized to arbitrarily reject the only evidence touching this vital point. Notwithstanding the fatal weakness of the evidence introduced by the plaintiff in support of his contention that the company was estopped from urging the defense it relied on concerning the taking out of concurrent insurance, the court below saw proper to submit the issue thus raised to the jury, instructing them, in effect, if they believed the evidence offered by the plaintiff upon this branch of the case, they should find against the defense set up by the company. We are constrained to hold that, in so doing, the trial judge committed grave error.

2. Through mere inadvertence, doubtless, the court further

erred in instructing the jury as to the defenses relied on, respectively, by the Imperial and the defendant company. This is little to be wondered at, as the defenses set up by these companies were not, in all respects, identical, and were easily to be confused in one trial of the two separate cases brought by the insured. The error referred to was in incorrectly informing the jury that the Imperial company alone set up the defense that the insured was not the owner of the property at the time he procured insurance thereon. We call attention thereto merely with a view to averting a repetition of the error when the case is tried again.

3. Many additional questions were presented by the defendant's motion for a new trial; but as the case, upon these points, is controlled by the decision this day rendered in its companion case, referred to in the beginning of this opinion, no further discussion of them herein would be profitable.

*Judgment on main bill of exceptions affirmed. On cross-bill reversed. All the Justices concurring.*