795.   JOHNSON, trustee, *v.* SUN FIRE INSURANCE CO.

1. On the evidence submitted in behalf of the plaintiff, the court properly awarded a nonsuit. The evidence clearly disclosed that the contract had been avoided, (*a*) because, contrary to the warranty contained in the policy, the insured took other insurance, which was in force at the time of the fire; (*b*) because the insured failed to keep an inventory or to keep books which showed the status of his business, in violation of the warranty known as the "iron-safe clause;" (*c*) because the brief

of evidence discloses that the insured did not own the land (on which the house which was insured was built) in fee simple, as he had represented.

2. The contract being entire and the premium payable in a gross sum, and it being agreed that the contract,. as a whole, should be void upon the violation of certain conditions contained in it, the policy (if not voided for other reasons), when avoided as to the buildings, likewise became void as to the stock of goods therein.

Action on insurance policy, from city court of Atlanta—Judge Reid. March 19, 1907.

Argued December 18, 1907.—Decided January 27, 1908.

*Mayson & Hill,* for plaintiff.

*Slaton & Phillips,* for defendant.

RUSSELL, J.  O. P. Bennett procured a policy of insurance with the Sun Fire Insurance Company. His interest was transferred to his trustee in bankruptcy. The trustee in bankruptcy brought suit against the insurance company. At the conclusion of the plaintiff's evidence, the trial judge nonsuited the case; and exception is taken thereto. We think the judgment was right for three reasons. The evidence disclosed that at the time of the fire Bennett had $4,500 insurance upon the property, which was insured by the defendant in error. Under the terms of the policy, this fact avoided the contract of insurance, for the reason that only "$2,700 total concurrent insurance" was permitted in the endorsement on the policy, and the policy contained a provision that "this entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on the property covered in whole or in part by this policy." It is plain that concurrent insurance is that covering the same items insured in the policy sued on. This is shown in the brief of evidence, and is undisputed. The requirement of the policy, to which the insured assented by accepting it, and the violation of which avoids the contract of insurance, is not only not unreasonable, but is in accordance with the provisions of the code. "A second insurance on the same property, unless by consent of the insurer, voids his policy." Civil Code, §2107. The testimony that the agent was of the opinion and stated that the insured could take out more insurance does not affect the rights of the company. The insurance agent has no power to

bind as to the future conduct of the insured, and can not waive as to other insurance in the future. *Morris* v. *Insurance Co.,* 106 *Ga.* 475 (33 S. E. 430) ; Insurance Co. *v.* Mowry, 96 U. S. 544 (24 L. ed. 674) ; Havens *v.* Home Ins. Co., 111 Ind. 90 (12 N. E. 137, 60 Am. R. 689).

In the particular policy which is the subject-matter of this suit it is expressly stipulated that "in any matter relating to the procuring of this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company." An insurance company has the same right as the insured to agree, on its part, with the assured upon the terms of the contract, and the insurer is not bound beyond the terms of this agreement. One of the most important elements that enter into a contract of insurance is the moral risk, and an insurer has the right to protect himself by fixing a maximum amount of insurance, beyond which the insured will not be allowed to procure protection, in order to compel the insured himself to carry part of the risk, and, by thus assuming this liability, to diminish the risk of the insurer. "It is a settled policy of insurers against loss by fire to protect themselves against incendiarism and negligence, by compelling the insured to bear some of the risk, so that if the risk be destroyed he will suffer loss notwithstanding his insurance. The object of such rule is to place the insured in such a position respecting the property that from the consideration of self-interest he will not only not burn it, but will be watchful and careful in guarding against fire." 2 Cooley's Briefs on Insurance, 1831 et seq. "Moral hazard in insurance is but another name for the pecuniary interest in the insured to permit the property to burn. Statistics, experience, and observation all teach that the moral hazard is less when the pecuniary interest of the insured in the protection of the property against fire is greatest, and that the moral hazard is greatest when the insured will gain most by the burning of the property." The terms of these contracts are neither unjust, unreasonable, nor unfair. They rest upon a sound policy of the business of insurance. Syndicate Ins. Co. *v.* Bohn, 65 Fed. 175 (12 C. C. A. 531, 27 L. R. A. 614).

It appears, from the evidence in the case, that the other policies introduced in evidence are concurrent and the amount of insurance exceeds $2,700, which is the amount of concurrent insurance

permitted by the terms of the policy upon which this suit is based. But even if the insurance were not concurrent, inasmuch as the policy written by the defendant in error only permitted concurrent insurance, the policy would nevertheless be avoided by the additional insurance disclosed in the record. 2 Cooley's Briefs on Ins. 1448; 2 Clements on Fire Ins. 83. So that the judge would have been authorized to have nonsuited the plaintiff upon the violation of the contract as to the excessive insurance taken out by the plaintiff, if for no other reason.

Personally the writer does not favor the restriction imposed by the "iron-safe clause." The strict requirements of this policy and of all similar policies upon this subject are, in my opinion, unreasonable and unnecessary. But it is not the duty of courts to make contracts, but only to enforce them as made, where they are entered into by persons able to contract. It is one of the essential stipulations of the present contract of insurance, and a warranty on the part of the insured, (1) that "the assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of the issuance of this policy, or this policy shall be null and void from such date, and, upon demand of the assured, the unearned premium from such date shall be returned. (2) The assured will keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from date of inventory as provided for in the first section of this clause, and during the continuance of the policy. (3) The assured will keep such books and inventory and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or, failing in this, the assured will keep such books and inventory in some place not exposed to a fire which would destroy the aforesaid building. In the event of failure to present such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon." As we have said above, in a number of States in the Union such war-

ranties are not required of insurers. The contract, however, is valid in this State and the insurer has the right to declare the policy avoided upon this breach. The evidence in this case discloses the fact that the terms of the warranty on the part of the insured were not complied with, either as to books or inventory. The inventory might have been sufficient if it could have been ascertained from the books what amount of stock was on hand at the date the policy was issued, and what quantity of the goods shown by the inventory to have been purchased had been sold. It is quite apparent, however, from the evidence, that the books afforded the plaintiff no means of compliance with the terms of his warranty. "An invoice of goods purchased is not an inventory of stock to be produced under the 'iron-safe clause' of a fire-insurance policy," nor is a set of books such an inventory. Upon this subject see *Everett-Ridley-Ragan Co.* v. *Traders Ins. Co.,* 121 *Ga.* 228 (48 S. E. 918, 104 Am. St. R. 99); *So. Fire Ins. Co.* v. *Knight,* 111 *Ga.* 622 (36 S. E. 821, 52 L. R. A. 70, 78 Am. St. R. 216); *Hester* v. *Scottish Ins. Co.,* 115 *Ga.* 454 (41 S. E. 552).

3. It is very clear that under his father's will, O. P. Bennett, the insured, held only a life-estate in the land whereon was situated the building insured by the contract in this case. The verbiage of the will, so far as material, upon this 'subject, is "this land to be his during his natural life, and at his death to go to his heirs." See *Glore* v. *Scroggins,* 124 *Ga.* 924 (53 S. E. 690); *Brown* v. *Brown,* 97 *Ga.* 531 (25 S. E. 353, 33 L. R. A. 816); *Crawley* v. *Kendrick,* 122 *Ga.* 185 (50 S. E. 41); *Melton* v. *Camp,* 121 *Ga.* 693 (49 S. E. 690); Civil Code, § 3084.

But it is insisted by counsel for plaintiff in error that though the insured have only a life-estate in the land, this fact will only avoid the policy pro rata in such an amount of the policy as applies to the building; that it can not affect the portion of the insurance which covers the merchandise contained in the building and as to which there is no dispute that the title was in the plaintiff in error. To our minds this might seem a reasonable construction were it not that the Supreme Court of this State has decided to the contrary in *Phœnix Ins. Co.* v. *Gray,* 107 *Ga.* 110 (32 S. E. 948), and *Southern Fire Ins. Co.* v. *Knight,* supra, in both of which cases it was ruled that the policy of insurance

was an entire contract. In the *Knight* case the policy sued on insured both the stock of goods and the building. The premium due upon the policy; as in this case, was a gross sum, and the question arose whether a breach of a warranty relating to the goods insured, and recovery for their loss, would also bar recovery for the loss of the building. In the present case the question is merely reversed, and is whether the breach of warranty as to the building bars recovery for the loss of the merchandise. In the *Knight* case, Justice Cobb, delivering the opinion, says: "What was the intention of the parties with respect to the question just above stated? If this intention is to be derived from the language used, and it must be, it would seem to be clear that the contract was entire and indivisible, and that a breach of a condition which would work a forfeiture would avoid the entire policy, and not simply a portion thereof. The parties contracted that 'the policy' should be void in case of failure to comply with the iron-safe clause. The policy embraces insurance upon both the building and its contents, and the premium is payable in a gross sum. 'If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may consist of several distinct and wholly independent items.' 2 Parsons, Con. *519. It was competent for the parties to make two separate and distinct contracts, one covering the goods, and the other the building; but they did not see proper to do this. They combined the two and made the consideration moving toward the insurer a gross sum. They further provided that the *contract*, not a *part* of it, should be void under certain conditions. . . In such a case there is but one thing for the courts to do, and that is, to enforce the agreement as made." Justice Cobb then proceeds to say that the question, as to whether a policy of insurance, such as is involved in the present case, constitutes a separable or an entire contract, is not a new one, and cites a large number of authorities sustaining the opinion of the court.

We are of the opinion that for each of the three reasons to which we have referred, the judgment of the lower court in awarding a nonsuit was right; but under the rule announced in the *Knight* case, if for no other reason, the policy was avoided, the contract being entire, and there was nothing left to submit to the jury.                                   *Judgment affirmed.*