## SPRINGFIELD FIRE &c. INSURANCE CO. v. PRICE.

1. Where a policy of fire insurance contained a stipulation that it should be void if the subject of insurance be a building on ground not owned by the insured in fee simple, but, at the time the application for insurance was made, the company, through its agent, knew that the applicant did not own the land on which the building sought to be insured was situated, the company, in defending an action on the policy, will be estopped from setting up the non-compliance of the insured with this condition of the policy.

2. An agent of an insurance company, fully authorized to make out and issue policies of insurance, has power to employ clerks in the ordinary business of the agency; and if such clerk solicits insurance, and a policy of insurance is duly issued, knowledge of facts material to the risk, acquired by the clerk in the solicitation, and prior to the issuance of the policy, is notice to the insurance company.

3. Reformation is not necessary to avoid the defeat of a policy of insurance on account of any matter in existence at the time of the issuance of the policy, with which the company is charged with knowledge. So where the duly authorized agent of an insurance company failed to note on the policy containing the stipulation specified in the first headnote that the building, which was the subject of insurance, was on

leased land, the failure of the insured to read his policy, and to observe the company's omission in this respect, is not such laches as will defeat his recovery on the policy by destroying the estoppel of the defendant to dispute the validity of the contract of insurance.

4. Where a tenant rents land from year to year under a verbal contract with his landlord, that in consideration of the payment of an annual rental the tenant may occupy the premises and erect thereon a building which is to be the property of the tenant and removable by him, and where such tenant erects a building and in his application for insurance notifies the authorized agent of the insurance company that the building is on "leased ground," such information is sufficient to put the insurance company on notice of the character of his interest in the building, and effectual to estop the insurance company from setting up as a defense the stipulation in the policy that the contract of insurance was to be invalid if the building which was the subject of insurance was not on ground owned by the insured in fee simple.

Argued January 14,—Decided June 17, 190?.

Action upon insurance policy.    Before Judge Seabrook.    Chatham superior court.    March 14, 1908.

*Adams & Adams*, for plaintiff in error.

*R. R. Richards* and *Saussy & Saussy*, contra.

Evans, P. J.    This is a suit by L. S. Price against the Springfield Fire & Marine Insurance Company, to recover damages sustained by reason of the destruction of two certain buildings described in a policy of insurance issued by the defendant to the plaintiff.    The petition contained an equitable feature, in that it sought to reform the policy in case the court should hold that the pleaded facts required reformation of the contract as essential to recovery.    The defendant demurred generally and specially; the plaintiff amended to meet the special demurrers, and the court overruled the general demurrer.    The case resulted in a verdict for the plaintiff.    The court refused a new trial, and the defendant excepted to each of the rulings stated.

1.    The policy sued on contains a clause that "if the subject of insurance be a building on ground not owned by the insured in fee simple," the "entire policy, unless otherwise provided · by agreement indorsed hereon or added hereto," shall be void.    The petition sets out that the ground on which the buildings were situated was not owned by the insured, but that at and before the date of the issuance of the policy a duly authorized agent of the company was informed by the insurer that the buildings upon which insurance was sought were upon leased ground, and the

agent of the insurance company was instructed to so note upon the policy, which by accident or mistake he failed to do. The policy also contained the further stipulation that "no officer or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached." The insurance company defends its refusal to pay the amount of damage done the property insured, because the buildings were upon ground not owned by the insured. In *Johnson v. Ætna Insurance Co., 123 Ga.* 404 (51 S. E. 339, 107 Am. St. R. 92), it was held that "Where a policy of fire insurance contained a stipulation that it should be void 'if the subject of insurance be a building on ground not owned by the insured in fee simple,' but at the time the application for insurance was made the company, through its agent, knew that the applicant did not own the land on which the building sought to be insured was situated, it will not be heard, in defense to an action on the policy, to set up the non-compliance of the plaintiff with this condition of the contract." Restrictions inserted in the contract upon the power of the agent to waive any condition, unless done in a particular manner, do not apply to those conditions which relate to the inception of the contract, where it appears that the agent has delivered it, and received the premiums, with full knowledge of the actual situation. *Wood v. American Fire Ins. Co.,* 149 N. Y. 382 (44 N. E. 80, 52 Am. St. R. 733); *Mechanics Ins. Co. v. Mutual Bldg. Assn.,* 98 *Ga.* 262 (25 S. E. 457); *Johnson v. Ætna Ins. Co.,* supra; 3 Cooley's Briefs on Ins. 2651. From these authorities the conclusion follows that if notice was given by the insured to an authorized agent of the company that the buildings insured were upon leased ground, prior to the issuance of the policy, the company could not avoid the policy if the proof showed that the buildings were upon leased premises, even if that fact was not noted on the policy.

44

2. The defendant, however, contends that the person whom the plaintiff notified at the time of the issuance of the policy that his buildings were located on leased ground was not its agent, but was a mere clerk or employee in the office of the company's agent, and that such clerk was not its agent for any purpose. On the trial it was developed that the defendant appointed George S. Haines as its agent, "with full power to receive proposals for insurance against loss or damage by fire in Savannah and vicinity, to receive monies and countersign, issue, renew, and consent to the transfer of policies of insurance signed by the president and secretary of the said Springfield Fire and Marine Insurance Company, subject to the rules and regulations and to such instructions as may from time to time be given by the company." Haines did an insurance business in Savannah, rented and paid for his own offices, and employed and paid his clerks and other help without any participation by the company. He employed N. L. Bedford and J. A. Sullivan in the conduct of his insurance business. Bedford wrote up the forms of policies on the typewriter, filled in the descriptions, etc., and Haines would sign them. Bedford solicited insurance and delivered policies. In December, 1901, he solicited the plaintiff to insure with the defendant the buildings covered by the policy sued on, as plaintiff had his stock and some other buildings insured with defendant. Prior to that time the plaintiff had had them insured with A. G. Guerard & Sons, and the policy with that agency had noted on it that the buildings were on leased ground. When Bedford solicited this insurance the plaintiff informed him that the buildings were on leased ground, and requested him to note that fact on the policy, as the Guerard agency had done. Bedford requested that he be furnished with the old policy to write the new one from, which was done. When the policy was delivered by Bedford the plaintiff asked him if it was all right, and, on being assured it was, placed it in his safe. Later the plaintiff permitted one Andeppa to remodel one of the three buildings covered by the original policy, and insure it for himself, and at that time telephoned the office of Haines to send out a man, and Sullivan came. The plaintiff testifies that he explained his rights and those of Andeppa to Sullivan, and on March 20, 1902, the old policy was canceled; and a new one issued, covering the two remaining buildings of the plaintiff, in-

sured in the canceled policy. At the expiration of the year, on March 20, 1903, a renewal policy was brought to the plaintiff by. Bedford. When this policy was delivered the plaintiff did' not look at it, but placed it in his safe, and never had occasion to examine it until after the fire, when the adjuster told the plaintiff that his policy did not have it noted thereon that·the buildings were on leased premises. Bedford testified that the written part of the policy was in his handwriting. At the.time it was written and delivered he wrote policies, and·did any work about the office that was necessary in the office of Haines. When an application was made for a policy, he would' write it up and present it to Mr. Haines for his signature, and he would sign it. Applications for insurance were sometimes in writing, but usually oral or over the telephone. After a policy was signed he would deliver it. He inspected risks about town, and reported to Haines, when Haines could decide whether he would effect the insurance or not. Soliciting insurance was a part of his business, and he was not paid extra for such work. He was aware that these buildings were on leased ground, but does not remember whether this fact was communicated to him when the first policy was written or not. On some occasions Haines would sign up blank policies and leave them with Bedford to be filled in and delivered. It was also in evidence that it is customary for local agents in Savannah to employ clerks to get information in regard to the condition of property and examine risks. Dependent upon the information received through clerks, they issue the policy. Haines had authority to have insured these buildings on leased ground, but would not have done so without communicating with the company. Bedford did not inform him that these buildings were on leased ground.

It is well settled that an agent who is supplied by the insurer with blank policies properly signed by the company, and who is authorized to fill up, countersign, and deliver policies to applicants for insurance, is a general agent of the insurance company in the matter of soliciting and accepting risks. Continental Ins. Co. v. Ruckman, 127 Ill. 364 (20 N. E. 77, 11 Am. St. R. 121); May on Ins. §126; 1 Cooley's Briefs on Ins. 347; *Jesse French Piano Co.* v. *Cardwell*, 114 *Ga.* 340 (40 S. E. 292). So that the practical question is, whether knowledge of facts material to the risk acquired by the soliciting agent in the employment of

such general agent of a fire insurance company, prior to the issuance of the policy, and while acting as such soliciting agent, is notice to the insurance company. Our code declares that "Whatever one may do himself may be done by an agent, except such personal trusts in which special confidence is placed on the skill, discretion, or judgment of the person called in to act; so an agent may not delegate his authority to another, unless specially empowered to do so." Civil Code, § 2999. The inhibition against an agent delegating his power as contained in this code section is only declaratory of the common law, and is but another form of expression for the maxim "delegata potestas non potest delegari." A principal may expressly authorize his agent to appoint a subagent, and under some circumstances authority to appoint a subagent between whom and the principal a privity of contract will exist may be implied. Instances of an agent's implied authority to appoint a subagent may be found in cases where from the conduct of the parties to the original contract of agency, or from the nature of the particular business which is the subject of the agency, or where substitution is authorized by general custom or usage, or where substitution is authorized by necessity, it may reasonably be presumed that the parties to the original contract of agency contemplated that such authority should exist. 1 Clark & Skyles on Agency, § 345. The power of an insurance agent, authorized to contract for risks, receive and collect premiums, and deliver policies, to confer authority on his clerk or assistant to exercise the same powers, so as to create a privity between the clerk and the insurance company, has been frequently before the courts of last resort of this country. The consensus of judicial opinion is to the effect that the knowledge of facts material to the risk, by a clerk of the agent, sent by him to solicit insurance and take applications, binds the company as much as if the agent, the clerk's master, knew it. Electric Life Ins. Co. *v.* Fahrenkrug, 68 Ill. 463; Krum *v.* Jefferson Fire Ins. Co., 40 Ohio St. 225; Arff *v.* Insurance Co., 125 N. Y. 298 (25 N. E. 1073, 10 L. R. A. 609, 21 Am. St. R. 721); Co-operative Co. *v.* Ins. Co., 135 N. Y. 298 (31 N. E. 1015); Bergeron *v.* Pamlico Ins. Co., 111 N. C. 45 (15 S. E. 883); German Ins. Co. *v.* Everett, 18 Texas Civ. App. 514 (46 S. W. 95); Graham *v.* Am. Fire Ins. Co., 48 S. C. 95 (26 S. E. 323, 59 Am. St.

R. 707); Goode *v.* Ga. Home Ins. Co., 92 Va. 392 (23 S. E. 344, 30 L. R. A. 842); Davis *v.* King, 66 Conn. 465 (34 Atl. 107, 50 Am. St. Rep. 104); Duluth National Bank *v.* Knoxville Fire Ins. Co., 85 Tenn. 76 (1 S. W. 689, 4 Am. St. R. 744); International Trust Co. *v.* Norwich Ins. Co., 71 Fed. 81 (17 C. C. A. 608); 1 Clement on Ins. 425, Rule 26; 19 Cyc. 812. The reason for the rule has been thus stated by the Supreme Court of Alabama: "The maxim, delegatus non potest delegari does not apply in such case, though the service inherently is of a personal character, because authority to delegate delegated powers is found by implication from the extent and general nature of the business in the original authorization to the general agent." Ins. Co. *v.* Thornton, 130 Ala. 222 (30 So. 614, 55 L. R. A. 547, 89 Am. St. R. 30). In the case of Bodine *v.* Exchange Fire Ins. Co., 51 N. Y. 117 (10 Am. R. 566), the court said: "We know according to the ordinary course of business that insurance agents frequently have clerks to assist them, and that they could not transact their business if obliged to attend to all the details in person; and these clerks can bind their principals in any of the business which they are authorized to transact." The Supreme Court of Michigan said: "Courts will recognize the ordinary course of business. It must be well known that these local agents do their business to a very large extent through clerks, who solicit insurance, make out applications and policies, and generally attend to the business of their employers. In such cases their acts are as binding as though done by the agents themselves." Steele *v.* German Ins. Co., 93 Mich. 81 (53 N. W. 514, 18 L. R. A. 85). And Mr. Cooley in the third volume of his Briefs on Insurance, page 2527, summarizes the law on this point as follows: "The business of an insurance agent is generally of such nature and extent that it requires the employment of subagents and clerks if it is to be taken care of properly. Such subagents or clerks may be regarded as agents of the company by an insured dealing with them. Hence it follows that notice given a subagent or clerk, of matters vitiating a policy, will be imputable to the company, the same as though communicated to the regularly appointed agent." This author states in the same connection that "A contrary rate prevails in some courts, where the position is taken that a subagent or clerk will not be

regarded as the agent of the company unless he is in the employ of the company," citing *Morris* v. *Orient Ins. Co.,* 106 *Ga.* 472 (33 S. E. 430), as sustaining this exception. We do not think that a careful examination of the *Morris* case justifies Mr. Cooley's classification. In that case Morris sought to escape the effect of a clause avoiding his policy if additional insurance was taken, by showing that the had written Cobb, the company's agent, at the time of taking out this additional insurance, and in reply thereto a letter was received from a clerk of Mr. Cobb, acknowledging receipt of the communication, the writer saying: "Mr. Cobb isn't at home, but I will inform him as soon as he comes." It was said in the opinion that "no attempt was made to show that the writer of the letter last above referred to was in any sense the agent or representative of the insurance company of which Mr. Cobb was the agent. On the contrary we gather from the meager testimony brought out in this regard that this person was merely a clerk in the service of the agent, not in the employ of his principal in any capacity." In the *Morris* case, as in the case of *Lippman* v. *Ætna Ins. Co.,* 108 *Ga.* 392 (33 S. E. 897, 75 Am. St. R. 62), the waiver sought to be set up was of a condition subsequent to the issuance of the policy, and not of a condition precedent to its issue. The rule stated in reference to waivers of conditions precedent will not generally apply where the waiver relied on is one that has taken place subsequently to the delivery and acceptance of a policy; as the insured is then presumed to have knowledge of the restrictions, and will be bound thereby. 3 Cooley's Briefs on Ins. 2513; *Johnson* v. *Ætna Ins. Co.,* 123 *Ga.* 406, 407 (51 S. E. 339, 107 Am. St. R. 92). Further, it did not appear in the *Morris* case that the clerk had any authority whatever in reference to the insurance business of Mr. Cobb, or that he was even employed in such business, or performed any duties connected therewith. It does not appear that he had anything whatever to do with the soliciting, preparing, or delivering of policies, or even that his duties related to insurance in any way. Nor is there in any other case in our reports which forbids us from adopting the rule as laid down by the current of authority, and so well supported on principle, We hold that a general agent, having authority to make and issue policies for an insurance company, has power to employ

clerks to discharge the ordinary business of the agency; and where a policy of insurance is duly issued, knowledge of facts material to the risk, acquired by such clerk while soliciting the insurance, and prior to the issuance of the policy, is notice to the insurance company.

3. By demurrer, plea, and in several grounds of the amended motion for new trial the defendant seeks to set up as a defense the alleged laches of plaintiff, who, with knowledge that it should be noted on his policy that his houses were on leased ground, received the several policies of insurance without such notation, and kept them in his possession through a period of many months, without reading his policy to see if it was so prepared. We do not think that such laches furnishes any ground of defense. In the first place, if plaintiff informed Bedford that his buildings were on leased premises when the application for insurance was made, it was not necessary that that fact should be noted on his policy in order to make it valid. That the plaintiff thought it necessary, even after notice, does not change its legal effect, nor make it necessary when in law it was not. In the second place, if the laches of the insured in failing to read his policy would in any event release the insurance company from liability to the insured where the insurer had notice of the broken condition at the time the policy was taken, it must do so in every case; for the real laches, if any, occurs in the first instance in receiving a policy without reading it, and in failing to note its conditions. It is a well-known fact of ordinary experience that papers such as insurance policies, deeds, etc., which are usually kept in one's "strong box," are seldom inspected except upon delivery, after which they are filed away not to be disturbed till some future happening again calls for them. It is true that the plaintiff's petition contains an alternative prayer for reformation by having the omitted clause inserted in the policy; but from the charge of the court, and the form of the verdict, the case was submitted to the jury to determine the defendant's liability, independently of the prayer for reformation. Reformation is not needed to avoid the defeat of a policy on account of any matter in existence at the time of the issuance of the policy, with which the company is charged with knowledge. 1 Cooley's Briefs on Ins. 855. Even if reformation were proper in the present

case, it was not necessary, as the plaintiff could have relied upon the estoppel in pais, without invoking affirmative equitable relief. And granting that the plaintiff's laches might defeat his right to affirmative equitable relief, this would not deprive him of the right to recover what he might be entitled to on the policy in his suit at law. *Trust Co.* v. *Scottish Ins. Co.,* 119 *Ga.* 672 (46 S. E. 855).

4. It is insisted that under the facts of the present case the ground on which the insured buildings stood was not "leased premises," and for that reason plaintiff's information to Bedford was not true, and therefore was not notice to the company which would waive the condition in the policy. It is also contended that under the terms of the contract under which this ground was occupied the buildings became a part of the realty, and were not in fact the property of the plaintiff, and that he had no insurable interest therein. It appears from the evidence that the land on which these buildings were situated belonged to the estate of Mary Jane Roberts. The representative of that estate testified that the buildings belonged to plaintiff so far as this estate was concerned. The taxes on these improvements were not paid by the estate. Originally he had rented it as a vacant lot to W. A. Price for a term of years; he does not remember whether under a written lease or not. This was in 1893. Under that contract Price had the right to place any improvements on it he saw fit, and remove them at any time he saw fit. In 1902 the rent was raised. At that time he assured plaintiff he had no claim to any of the improvements. Price has the same lease he has had since 1893, and he is now trying to arrange to give him a lease for seven years. Witness is prepared, as soon as he can arrange the lease, to give Price a written lease, and it will be stated that the estate makes no claim for the improvements. At the expiration of any rental season the understanding was that Price had the right to remove his improvements, and the estate made no claim to them whatever. Since 1902 it had been rented by the year at $700 per year. He was under the impression that the original lease was in writing. The plaintiff testified that his father had in 1893 rented the place, but the original lease was destroyed. He has seen the lease. Plaintiff was connected with his father in business and afterwards bought his

father out, and in buying him out he secured the improvements. He does not remember whether the first lease was for five or ten years. The writings transferring his father's interest are also destroyed. In 1902 he went to the representative of the estate and requested a long lease. The representative told him to go ahead and put any improvements he pleased on the place, and that as long as his rent was paid he could continue as his tenant. On several occasions it was stated the improvements were to be plaintiff's. On the strength of this agreement, in 1902 the plaintiff remodeled and enlarged the buildings. The price per year was agreed on at that time, and it was distinctly agreed that the plaintiff could remove his buildings at any time he saw fit. The contention of the defendant· is that this arrangement did not satisfy the statute of frauds, and that for this reason the plaintiff had no title to the buildings. Even if it was necessary for the contract to be in writing in order to satisfy the statute, here the plaintiff had executed his part of the agreement, and the owner of the land could not have pleaded the statute as against his right to remove his improvements, if he chose. We think when the insurance company was notified through its agent that the buildings insured were on leased ground, and issued the policy, it was put on sufficient notice to have caused it to make a full inquiry into the title of the property. But aside from this, we think, under the facts in this case, the buildings were on leased premises. Property may be leased in parol for one year. Civil Code, §3117. Nor do we think that the contention that the buildings were not the property of plaintiff is sound. He was at least a tenant from year to year, and there was no necessity for such a contract to be in writing. Nor was it necessary that the agreement that he could remove the buildings at any time he chose should be in writing. It was a part of the yearly contract of rental, which is expressly excepted from the statute of frauds in this respect. Civil Code, §3117. There is no pretense that the plaintiff did not have an insurable interest in the buildings, but the contention is that information to the insurance company that the buildings were upon "leased ground" was insufficient to apprise the company of the nature of the plaintiff's interest, and ineffectual as an estoppel against the company from availing itself of the stipulation in the policy that the contract

of insurance was to be void if the ground on which the buildings were erected was not owned by the insured in fee simple.

What has been said above covers the various assignments of error on the part of the defendant. We are therefore of opinion that the court did not err in any of the rulings complained of.

*Judgment affirmed. All the Justices concur.*