38472. WHITMIRE v. CANAL INSURANCE COMPANY.

612

DECIDED SEPTEMBER 29, 1960—REHEARING DENIED OCTOBER 20, 1960.

*C. E. Smith, Jr.,* for plaintiff in error.
*William P. Whelchel,* contra.

TOWNSEND, Judge. ■ *Code* § 56-825 provides: "An alienation of the property insured and a transfer of the policy, without the consent of the insurer, shall void the policy; but the mere hypothecation of the policy, or creating a lien on the property, shall not void the policy." It is contended by the defendant that the circumstances of this transaction constituted an alienation of the truck by the plaintiff to his mother so as to completely void the insurance thereon. It is, however, obvious from the undisputed evidence that no such alienation was intended and could only result, if at all, from the legal effect of the bill of sale to secure debt executed by the plaintiff's mother in his presence. All parties to the transaction testified that their

intention in the matter was to make the truck collateral for a loan to the plaintiff; the agent of the finance company additionally stated that he prepared the papers and his sole purpose in so doing was to have an adult answerable for the debt because of the plaintiff's minority. According to the evidence for the plaintiff, his mother received no benefit from the transaction, and the truck remained in his possession for use in his business. While it is true that "where one knowingly witnesses a conveyance of property to which he claims a right, he is thereafter estopped to assert title thereto" as between the parties to the transfer, yet mere estoppel does not of itself pass title, and before the conduct will even constitute an estoppel it must be shown that the true owner knowingly let another alienate his property. *Davis v. Bulloch,* 161 Ga. 217, 220 (130 S. E. 526); *Groover v. Simmons,* 163 Ga. 778, 780 (137 S. E. 237). This plaintiff was told that his mother should be brought in to sign the note; he did not read the paper she signed and is not chargeable as a matter of law with knowledge that his mother was "claiming title" to the property, because she was not in fact doing so. The jury was at least authorized to infer that these parties were only acquiescing in an arrangement made by the lending agency, the result of which would be to cause the mother to sign a document transferring title to property which she did not in fact own. The evidence does not demand a finding that the plaintiff transferred title to the truck to his mother.

■ The testimony is to the effect that the insurance agent who issued the policy in question had authority to issue a loss payable endorsement thereon; that he had only one employee, a woman, and that she managed the office in his absence and had the duty of referring to him matters, such as endorsements on policies issued by the defendant insurance company, which she could not handle personally. She occupied the position of a clerk in the office, and notice to her, if given, will be considered as the equivalent of the same notice to the insurance agent who employed her. *Atlas Assurance Co. v. Kettles,* 144 Ga. 306 (2) (87 S. E. 1); *Springfield Fire &c. Ins. Co. v. Price,* 132 Ga. 687, 693 (64 S. E. 1074); 44 C. J. S. 826, Insurance, § 153.

■ The insurance company further contends that if the transaction outlined constituted an act of the defendant placing legal title in the finance company as security for debt, there is no coverage on this loss. The pertinent provisions of the policy are as follows: "Unless otherwise stated herein, except with respect to bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance, the insured is the sole owner of the automobile. . . This policy does not apply . . . (b) under any of the coverages, if the automobile is or at any time becomes subject to any bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance not specifically declared and described in this policy. . . Notice to any agent or knowledge possessed by an agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy. . . Assignment of interest under this policy shall not bind the company unless its consent is endorsed hereon." The bill of sale to secure debt was such an encumbrance as would, if not endorsed on the policy, remove the loss from coverage unless for some reason this defense is not available to the insurance company. *Curtis v. Girard Fire &c. Ins. Co.*, 190 Ga. 854 (11 S. E. 2d 3). In *Clay v. Phoenix Ins. Co.*, 97 Ga. 44, 55 (25 S. E. 417) it was held: "It will be presumed conclusively, when, with knowledge that there was a mortgage upon the property, [the insurance company] nevertheless issued the insurance and accepted the premium, that it intended to waive the condition in question, and which would have the effect, otherwise, to render the policy void." The knowledge referred to in that case is knowledge of a clerk in the office of the insurance agent, at the time the policy was issued, that there was an existing mortgage on the property. The record in that case shows that the insurance policy in question also contained a provision as follows: "No agent is empowered to waive any of the conditions of this policy either before or after loss without official authority in writing from the company." Again taking the plaintiff's view of the case, the only difference between the cases is

that in the *Clay* case the encumbrance existed and the agent possessed the knowledge at the time the policy was written; in the present case the encumbrance was placed on the property after the policy was written and the agent then received notice of it and agreed to add the lendee's name by endorsement. The same result, however, was reached in *Fire &c. Ins. Co. v. Fields,* 94 Ga. App. 272 (94 S. E. 2d 113), an action relating to loss of coverage under a vacancy clause, where the policy was renewed at a time the premises were occupied and the vacancy occurred and the insurance agent was informed of that fact after the renewal but during the life of the policy. There was a similar provision against waiver of policy provisions. The holding is that, where the vacancy was reported and the agent assured the policyholder that he was still covered, the issue of lack of coverage was waived, especially in view of the acceptance of the additional payment on the premiums under the circumstances. See also *Sparks v. National Union Fire Ins. Co.,* 23 Ga. App. 38, 43 (97 S. E. 462); *New York Underwriters Ins. Co. v. Anderson,* 52 Ga. App. 112 (182 S. E. 529); *Corporation of . . . Assurance of London v. Franklin,* 158 Ga. 644 (124 S. E. 172, 38 A. L. R. 626); *Atlas Assurance Co. v. Kettles,* 144 Ga. 306, supra; *Springfield Fire &c. Ins. Co. v. Price,* 132 Ga. 687, supra; *Peninsular Cas. Co. v. McCloud,* 47 Ga. App. 316 (3) (170 S. E. 396). In *Brooker v. American Ins. Co.,* 65 Ga. App. 713, 718 (16 S. E. 2d 251) it is stated that for such an estoppel to arise there must be two prerequisites; first, the company must have access to the policy; second, there must have been a reliance on the promise of the agent by those to whom the promise was made and for whose benefit it was made. The testimony here clearly shows such reliance by Bates, the agent of the finance company, who was acting in behalf of both his company and the plaintiff in attempting to procure the endorsement on the policy. As to the policy, it was countersigned in Greenville, S. C., on June 8, 1956, and issued the same day, and notice of the loan was given the insurance agent Carter on the following day, June 9, according to Bates' testimony. Carter stated that as of the time Bates said he called, "he couldn't have had the policy because we had to order it. We couldn't have had his file on it. There wasn't a file on

the 9th day of June; there wasn't a file set up on it. We would have a copy of the letter where we ordered it from the company." Apparently on June 9, the insurance policy was in transit from the South Carolina office to that of the agent, from which it follows that the company did have access to it.

The testimony is in conflict as to whether or not the agent, through his clerk, received notice of the loan and agreed to have it endorsed on the policy, but under the view of the evidence set out above a verdict for the plaintiff would have been sustainable. It was accordingly error to direct a verdict in favor of the defendant instead of leaving the issue with the jury.

■ The denial of coverage by the defendant and its absolute refusal to pay the claim constitute a waiver of the policy requirements requiring the filing of proof of loss. *Code* § 56-831; *Hanover Fire Ins. Co. v. Scroggs,* 90 Ga. App. 539 (3) (83 S. E. 2d 295).

The trial court erred in denying the motion for new trial.

*Judgment reversed. Carlisle and Frankum, JJ., concur. Gardner, P. J., not participating.*